Docket No. 14-1534

---

**United States Court of Appeals**
**For the Federal Circuit**

---

Wright Manufacturing, Inc.,

*Patent Owner-Appellant,*

v.

The Toro Company,

*Third Party Requester-Appellee,*

---

*Appeal from the United States Patent and Trademark Office in Reexamination No.*
*95/001,741*

---

**THIRD PARTY REQUESTER-APPELLEE'S UNOPPOSED MOTION TO**
**CONSOLDIATE APPEAL NO. 14-1534 WITH APPEAL NO. 14-1558**

---

Third Party Requester-Appellee The Toro Company ("Toro") moves this

Court to consolidate Appeal No. 14-1534 with Appeal No. 14-1558.  The issues

that will be briefed by the parties and addressed by this Court in both appeals are

highly overlapping, as the patents at-issue are related, have similar subject matter,

have the same specification, and are rejected by the PTO based on the same prior

art for the same reasons.  For the convenience of the parties and the Court, these

two appeals should be consolidated.

The above-captioned case, Appeal No. 14-1534, relates to Patent Owner-

Appellant Wright Manufacturing, Inc.'s ("Wright's") appeal from the Patent Trial

and Appeal Board's decision in Inter Partes Reexamination No. 95/001,741, which rejected claims 1-40 pending in the 1,741 reexamination proceeding of U.S. Patent No. 6,438,931 ("the '931 patent"). (*See* Dkt. No. 5 at 1-2.)  A second appeal, Appeal No. 14-1558, relates to Wright's appeal from the Patent Trial and Appeal Board's decision in Inter Partes Reexamination No. 95/001,742, which rejected claims 1, 3, 4 and 6-17 pending in the 1,742 reexamination proceeding of U.S. Patent No. 6,935,093 ("the '093 patent"). (*See* Case No. 14-1558, Dkt. No. 9 at 1-2.)

The issues in the two appeals are highly overlapping. The '931 patent and '093 patent are related.  The '931 patent issued from U.S. Patent Application No. 09/714,824 ("the '824 application"). (*See* '093 patent, page 1.)  The '093 patent issued from a continuation of the '824 application. (*Id.*)  In addition, the specifications between the two patents are identical (other than correction of a couple editing issues). (*See* '093 patent, sheets 1-26, cols. 1-16; '931 patent, sheets 1-26, cols. 1-15.)  Further, the same exact prior art is at-issue in the two appeals. (*See* Hughey Decl. Exs. 1 & 2 (February 14, 2014 rehearing decisions); *id.* Exs. 3 & 4 (June 21, 2013 decisions).)  Before the Patent Trial and Appeal Board, the two cases were combined for oral argument.  Indeed, the content of the Patent Trial and Appeal Board's two rehearing decisions rejecting claims from each of the two

patents are identical.  (The Board referred to the decisions as "substantially identical".  *Id.* Ex. 1 at 2 n.1; *id.* Ex. 2 at 2 n.1.)

This Court previously sua sponte ordered that the two appeals should be companion cases assigned to the same merits panel for oral argument.  (Dkt. No. 14-1534 at 2.)  The Court also ordered that Wright's opening briefs for the two appeals should be due on the same date.  (*Id.*)  Under the current schedule, Wright is entitled to file two opening briefs, Toro is entitled to file two response briefs, Wright is entitled to file two reply briefs, and the parties will submit two joint appendixes.  There will then be two oral arguments on the same day before the same panel.

The Practice Notes to Federal Rules of Appellate Procedure Rule 12 recognize that appeals may be consolidated on motion or sua sponte by the Court. *See* Fed. R. App. Proc. 12, Practice Notes ("Other appeals may be consolidated on motion or by the court sua sponte.").  Consolidation is appropriate here because the issues in the two appeals are highly overlapping.  There is no need to burden this Court or the parties with six appeal briefs, two joint appendixes, and two separate oral arguments, when the issues can be adequately addressed in three briefs, one joint appendix, and one oral argument.

Counsel for Toro discussed this motion with counsel for Wright.  Wright has indicated that it does not oppose this motion.

Date: August 12, 2014                 Respectfully submitted,

                                      By: /s/Rachel C. Hughey
                                      Rachel C. Hughey
                                      rhughey@merchantgould.com
                                      Anthony R. Zeuli
                                      tzeuli@merchantgould.com
                                      MERCHANT & GOULD P.C.
                                      3200 IDS Center
                                      80 South Eighth Street
                                      Minneapolis, MN 55402
                                      Telephone: 612-332-5300
                                      Facsimile: 612-332-9081

                                      ATTORNEYS FOR APPELLEE
                                      THE TORO COMPANY

Docket No. 14-1534

—————————————————————————

## United States Court of Appeals
## For the Federal Circuit

—————————————————————————

Wright Manufacturing, Inc.,

*Patent Owner-Appellant,*

v.

The Toro Company,

*Third Party Requester-Appellee,*

—————————

*Appeal from the United States Patent and Trademark Office in Reexamination No. 95/001,741*

—————————

## DECLARATION OF RACHEL C. HUGHEY

—————————

I, Rachel C. Hughey, hereby declare under penalty of perjury pursuant to 28 U.S. C. §1746 the following:

1.    I am an attorney licensed to practice law in the State of Minnesota, and I am admitted to practice before this Court.  I am an attorney with the law firm of Merchant & Gould P.C., and counsel of record for Third Party Requester-Appellee The Toro Company ("Toro") in this action.  I make this declaration in support of Toro's unopposed motion to consolidate Appeal No. 14-1534 with Appeal No. 14-1558.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the February 14, 2014 Patent Trial and Appeal Board's decision in Inter Partes Reexamination No. 95/001,741.

3.    Attached hereto as Exhibit 2 is a true and correct copy of the February 14, 2014 Patent Trial and Appeal Board's decision in Inter Partes Reexamination No. 95/001,742.

4.    Attached hereto as Exhibit 3 is a true and correct copy of the June 21, 2013 Patent Trial and Appeal Board's decision in Inter Partes Reexamination No. 95/001,741.

5.    Attached hereto as Exhibit 4 is a true and correct copy of the June 21, 2013 Patent Trial and Appeal Board's decision in Inter Partes Reexamination No. 95/001,742.

6.    On July 8, 2014, counsel for Wright indicated in an email that it does not oppose Toro's request to consolidate.


/s/ Rachel C. Hughey
Rachel C. Hughey

Attorney for Third Party Requester
-Appellee The Toro Company

# EXHIBIT 1



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,741 | 09/06/2011 | 6,438,931 | 26.0.3.317/A | 3341 |

7590                    02/14/2014
NIXON & VANDERHYE PC
901 NORTH GLEBE ROAD
11th FLOOR
ARLINGTON, VA 22203

| EXAMINER |
|---|
| JASTRZAB, JEFFREY R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/14/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

THE TORO COMPANY
Requester, Cross-Appellant, Respondent

v.

WRIGHT MANUFACTURING, INC.
Patent Owner, Appellant, Respondent

Appeal 2013-002864
*Inter partes* Reexamination Control 95/001,741
Patent US 6,438,931 B2
Technology Center 3900

*Before* RICHARD M. LEBOVITZ, JEFFREY B. ROBERTSON and
DANIEL S. SONG, *Administrative Patent Judges.*

SONG, *Administrative Patent Judge.*

DECISION ON REQUEST FOR REHEARING

The Patent Owner filed PATENT OWNER'S REQUEST FOR
REHEARING on July 19, 2013 (hereinafter "Rehearing Request" or "Rhrg.
Req.") under 37 C.F.R. § 41.79 seeking rehearing of our Decision mailed
June 21, 2013 (hereinafter "Decision" or "Dec.") which affirmed various

1

Appeal 2013-002864
Reexamination Control 95/001,741
Patent US 6,438,931 B2

final rejections of the claims made by the Examiner.[1]  The Patent Owner
asserts that the Board overlooked various facts and requests modification of
the Decision.

We grant the Rehearing Request to the extent that we consider the
Patent Owner's arguments *infra*, but DENY the request to modify the
Decision.

Preliminarily, we observe that the Requester has filed THIRD PARTY
REQUESTER'S COMMENTS OPPOSING PATENT OWNER'S
REQUEST FOR REHEARING on August 17, 2013 (hereinafter
"Requester's Comments" or "Req. Com.").  Upon consideration, we agree
with the Requester's Comments and cite to portions thereof *infra* as
supplemental to our discussion.

Velke '031 in View of Cox, Musgrave, Busboom, Hale '536 and Hale
'798

The Patent Owner asserts that the Board overlooked the fact that "in
Velke '031 (the base reference) the cutter deck is rigidly connected to the
engine deck 3" so that "[t]here can be no relative movement between the
cutter deck and the engine deck 3."  (Rhrg. Req. 1).  Hence, the Patent
Owner concludes that "one of ordinary skill in the art would not have
modified Velke '031 by adding Busboom's stabilizing rod ... because there

---

[1] A substantially identical Request for Rehearing has been filed with respect
to the Board's decision also mailed June 21, 2013 for Appeal No. 2013-
002900 (Reexamination Control 95/001,742 for Patent US 6,935,093).  The
Board's decision with respect to that Request for Rehearing is being mailed
concurrently herewith.

2

Appeal 2013-002864
Reexamination Control 95/001,741
Patent US 6,438,931 B2

is no uncontrolled movement [between the cutter deck and the engine deck]
to stabilize." (Rhrg. Req. 1; *see also* Rhrg. Req. 2).

The Patent Owner misapprehends the fact that the main rejection
based on Velke '031 is not based on merely incorporating Busboom's
stabilizer rod into the mower of Velke '031. Rather, the rejection is based on
implementing the height-of-cut (hereinafter "HOC") adjustment mechanism
of Busboom into the mower of Velke '031 (Dec. 21 *citing* Right of Appeal
Notice (hereinafter "RAN") 15-17; *see also* Req. Com. 2-3). As first
explained in the Decision with respect to the rejection based principally on
Wright '138, the HOC adjustment mechanism of Busboom would include
the chain links and the stabilizing rods (Dec. 15-16). The reasons articulated
by the Examiner for the combination based on Velke '031 are that: using the
HOC adjustment mechanism of Busboom is merely a substitute for changing
the mounting of each wheel which is disclosed in Velke '031; and such
combination would provide ease of adjusting the HOC as compared to the
adjustment disclosed in Velke '031 (Dec. 21; RAN 15-17). We agreed with
the Examiner, the reasons articulated being rational and sufficient to support
the conclusion of obviousness (Dec. 21-22; *see also* Req. Com. 3).

The Patent Owner argues that Velke '031 "already has a system for
adjusting the height-of-cut" so that there would be no reason to replace it
with the HOC adjustment mechanism of Busboom (Rhrg. Req. 3).
However, as noted *supra* and pointed out in the Decision, the HOC
adjustment mechanism of Busboom which uses a lever that is simply
grasped by the user and moved to adjust the HOC would make such
adjustment easier as compared to the cumbersome method disclosed in

3

Appeal 2013-002864
Reexamination Control 95/001,741
Patent US 6,438,931 B2

Velke '031 wherein the height of each wheel must be adjusted separately (Dec. 21).

The Patent Owner further asserts that the stabilizing purpose of Busboom's control arm requires it to be long in order to reduce movement of the cutter deck thereby teaching away from the claims that require short control arms which would reduce the stabilizing function (Rhrg. Req. 3). However, the Patent Owner's assertion is not explained or substantiated by persuasive evidence. Our understanding is that control arms such as those disclosed in Busboom and the subject '248 patent are rigid structural members which are pivotably mounted to the mower deck and the frame. It is not apparent how shortening a control arm so as to be appropriately dimensioned for a smaller mower as set forth in the rejection would reduce the stabilizing function of the control arm.

### Wright '138 in View of Cox, Musgrave, Busboom, Hale '536 and Hale '798

The Patent Owner initially asserts that the Board overlooked the fact that "both parties agreed at the Oral Hearing that in Wright '138 (the base reference) the cutter deck 9 is probably rigidly connected to the engine deck 13 so that the cutter deck 9 and engine deck 13 move together as one unit." (Rhrg. Req. 5). The Patent Owner argues that "this agreement as to the content of Wright '138 cannot be ignored" and "[t]he Board's Finding of Fact 1(B) improperly ignores this agreement." (*Id.*). The Patent Owner also argues that Wright '138 does not include chains and the cutter deck is already structurally connected to the engine deck and the frame so that there

4

Appeal 2013-002864
Reexamination Control 95/001,741
Patent US 6,438,931 B2

is no need to stabilize anything by adding Busboom's control arm (Rhrg. Req. 5-6). The Patent Owner's arguments are unpersuasive.

Firstly, facts are established by the evidence, not by mere "agreement" between the parties. Secondly, Finding of Fact 1.B. was that Wright '138

> does not disclose the manner in which the mower deck is mounted/connected to the frame and engine deck, or require that the mower deck be fixed in position relative to the engine deck so as to preclude relative movement therebetween.

(Dec. 5, FF 1.B.).

In other words, Wright '138 does not disclose sufficient detail to allow a determination that there is no relative movement between the mower deck and the engine deck. The factual finding was neither that Wright '138 discloses relative movement, nor that it discloses no relative movement.

Thirdly, the Patent Owner itself conceded the possibility that the mower deck Wright '138 may be mounted and connected to the engine deck/ frame in a manner which allows for relative movement therebetween (Dec. 16 *citing* Resp. Br. PO 11-12; *see also* excerpts from the Oral Hearing set forth in Dec. 16, n.6 and Req. Com. 5).

The conclusion drawn in the Decision was that "while Wright suggests including a mechanism for adjusting the height of cut [], it does not actually disclose a specific mechanism for doing so (FF 1B-1D)." (Dec. 11; *see also* Req. Com. 4-5). The Patent Owner's erroneous assertion regarding the disclosure of Wright '138 notwithstanding, the Patent Owner again misapprehends the basis of the main rejection based on Wright '138 that was affirmed in the Decision by arguing that Wright '138 does not include chains so there is no need for stabilization by adding Busboom's control arm (Rhrg. Req. 5-6).

5

Appeal 2013-002864
Reexamination Control 95/001,741
Patent US 6,438,931 B2

As noted, Wright '138 does not disclose a mechanism for adjusting

HOC (Dec. 14; Dec. 5, FF 1B-1D). Hence, we explained,

> [a]bsent such information, one of ordinary skill in the art would
> have logically considered known HOC adjustment mechanisms
> to implement in the mower of Wright. Busboom is one such
> known mechanism. When implementing the HOC adjustment
> mechanism of Busboom in the mower of Wright, we agree with
> the Examiner (RAN 4) that it would have been obvious to
> provide control arms that are sized to be appropriate to the
> application so that when applied to the compact standing
> mower of Wright which has a compact frame, the control arms
> would be shorter than that disclosed in Busboom. (RAN 5).

(Dec. 14).

Finally, the Patent Owner argues that there are no chains in Cox or

Musgrave either so that there is nothing to stabilize (Rhrg. Req. 7).

However, the Patent Owner again misses the point that Wright '138 does not

disclose a mechanism for HOC adjustment, and that the affirmed rejection is

based on using the known HOC adjustment mechanism of Busboom.


## REHEARING DECISION

While we have considered the Decision in light of the Request for

Rehearing, and have elaborated on certain aspects of the Decision, we

decline to modify it in any respect.


## DENIED

Appeal 2013-002864
Reexamination Control 95/001,741
Patent US 6,438,931 B2

ack
PATENT OWNER:

NIXON & VANDERHYE PC
901 North Glebe Road
11th Floor
Arlington, VA 22203

THIRD PARTY REQUESTER:

James W. Miller
527 Marquette Avenue
Suite 1960, Rand Tower
Minneapolis, MN 55402

# EXHIBIT 2



### UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,742 | 09/06/2011 | 6,935,093 | JAR-3696-82 | 3410 |

23117     7590     02/14/2014
NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

| EXAMINER |
|---|
| JASTRZAB, JEFFREY R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/14/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

THE TORO COMPANY
Requester, Cross-Appellant, Respondent

v.

WRIGHT MANUFACTURING, INC.
Patent Owner, Appellant, Respondent

_____

Appeal 2013-002900
*Inter partes* Reexamination Control 95/001,742
Patent US 6,935,093 B2
Technology Center 3900

_____

*Before* RICHARD M. LEBOVITZ, JEFFREY B. ROBERTSON and
DANIEL S. SONG, *Administrative Patent Judges.*

SONG, *Administrative Patent Judge.*

DECISION ON REQUEST FOR REHEARING

The Patent Owner filed PATENT OWNER'S REQUEST FOR

REHEARING on July 19, 2013 (hereinafter "Rehearing Request" or "Rhrg.

Req.") under 37 C.F.R. § 41.79 seeking rehearing of our Decision mailed

June 21, 2013 (hereinafter "Decision" or "Dec.") which affirmed the final

1

Appeal 2013-002900
Reexamination Control 95/001,742
Patent US 6,935,093 B2

rejections of the claims made by the Examiner.[1] The Patent Owner asserts that the Board overlooked various facts and requests modification of the Decision.

We grant the Rehearing Request to the extent that we consider the Patent Owner's arguments *infra*, but DENY the request to modify the Decision.

Preliminarily, we observe that the Requester has filed THIRD PARTY REQUESTER'S COMMENTS OPPOSING PATENT OWNER'S REQUEST FOR REHEARING on August 17, 2013 (hereinafter "Requester's Comments" or "Req. Com."). Upon consideration, we agree with the Requester's Comments and cite to portions thereof *infra* as supplemental to our discussion.

## Velke '031 in View of Cox, Musgrave, Busboom, Hale '536 and Hale '798

The Patent Owner asserts that the Board overlooked the fact that "in Velke '031 (the base reference) the cutter deck is rigidly connected to the engine deck 3" so that "[t]here can be no relative movement between the cutter deck and the engine deck 3." (Rhrg. Req. 1). Hence, the Patent Owner concludes that "one of ordinary skill in the art would not have modified Velke '031 by adding Busboom's stabilizing rod ... because there

---

[1] A substantially identical Request for Rehearing has been filed with respect to the Board's decision also mailed June 21, 2013 for Appeal No. 2013-002864 (Reexamination Control 95/001,741 for Patent US 6,438,931). The Board's decision with respect to that Request for Rehearing is being mailed concurrently herewith.

2

Appeal 2013-002900
Reexamination Control 95/001,742
Patent US 6,935,093 B2

is no uncontrolled movement [between the cutter deck and the engine deck] to stabilize." (Rhrg. Req. 1; *see also* Rhrg. Req. 2).

The Patent Owner misapprehends the fact that the main rejection based on Velke '031 is not based on merely incorporating Busboom's stabilizer rod into the mower of Velke '031. Rather, the rejection is based on implementing the height-of-cut (hereinafter "HOC") adjustment mechanism of Busboom into the mower of Velke '031 (Dec. 22 *citing* Right of Appeal Notice (hereinafter "RAN") 15-16; *see also* Req. Com. 2-3). As first explained in the Decision with respect to the rejection based principally on Wright '138, the HOC adjustment mechanism of Busboom would include the chain links and the stabilizing rods (Dec. 16). The reasons articulated by the Examiner for the combination based on Velke '031 are that: using the HOC adjustment mechanism of Busboom is merely a substitute for changing the mounting of each wheel which is disclosed in Velke '031; and such combination would provide ease of adjusting the HOC as compared to the adjustment disclosed in Velke '031 (Dec. 22; RAN 15). We agreed with the Examiner, the reasons articulated being rational and sufficient to support the conclusion of obviousness (Dec. 22; *see also* Req. Com. 3).

The Patent Owner argues that Velke '031 "already has a system for adjusting the height-of-cut" so that there would be no reason to replace it with the HOC adjustment mechanism of Busboom (Rhrg. Req. 3). However, as noted *supra* and pointed out in the Decision, the HOC adjustment mechanism of Busboom which uses a lever that is simply grasped by the user and moved to adjust the HOC would make such adjustment easier as compared to the cumbersome method disclosed in

3

Appeal 2013-002900
Reexamination Control 95/001,742
Patent US 6,935,093 B2

Velke '031 wherein the height of each wheel must be adjusted separately
(Dec. 22).

The Patent Owner further asserts that the stabilizing purpose of
Busboom's control arm requires it to be long in order to reduce movement of
the cutter deck thereby teaching away from the claims that require short
control arms which would reduce the stabilizing function (Rhrg. Req. 3).
However, the Patent Owner's assertion is not explained or substantiated by
persuasive evidence. Our understanding is that control arms such as those
disclosed in Busboom and the subject '248 patent are rigid structural
members which are pivotally mounted to the mower deck and the frame. It
is not apparent how shortening a control arm so as to be appropriately
dimensioned for a smaller mower as set forth in the rejection would reduce
the stabilizing function of the control arm.

Wright '138 in View of Cox, Musgrave, Busboom, Hale '536 and Hale
'798

The Patent Owner initially asserts that the Board overlooked the fact
that "both parties agreed at the Oral Hearing that in Wright '138 (the base
reference) the cutter deck 9 is probably rigidly connected to the engine deck
13 so that the cutter deck 9 and engine deck 13 move together as one unit."
(Rhrg. Req. 4-5). The Patent Owner argues that "this agreement as to the
content of Wright '138 cannot be ignored" and "[t]he Board's Finding of Fact
1(B) improperly ignores this agreement." (Rhrg. Req. 5). The Patent Owner
also argues that Wright '138 does not include chains and the cutter deck is
already structurally connected to the engine deck and the frame so that there

4

Appeal 2013-002900
Reexamination Control 95/001,742
Patent US 6,935,093 B2

is no need to stabilize anything by adding Busboom's control arm (Rhrg.

Req. 5-6). The Patent Owner's arguments are unpersuasive.

Firstly, facts are established by the evidence, not by mere "agreement"

between the parties. Secondly, Finding of Fact 1.B. was that Wright '138

> does not disclose the manner in which the mower deck is
> mounted/connected to the frame and engine deck, or require
> that the mower deck be fixed in position relative to the engine
> deck so as to preclude relative movement therebetween.

(Dec. 5-6, FF 1.B.).

In other words, Wright '138 does not disclose sufficient detail to allow a

determination that there is no relative movement between the mower deck

and the engine deck. The factual finding was neither that Wright '138

discloses relative movement, nor that it discloses no relative movement.

Thirdly, the Patent Owner itself conceded the possibility that the

mower deck Wright '138 may be mounted and connected to the engine deck/

frame in a manner which allows for relative movement therebetween (Dec.

16-17 *citing* Resp. Br. PO 11-12; *see also* excerpts from the Oral Hearing set

forth in Dec. 17, n.6 and Req. Com. 5).

The conclusion drawn in the Decision was that "while Wright

suggests including a mechanism for adjusting the height of cut [], it does not

actually disclose a specific mechanism for doing so (FF 1B-1D)." (Dec. 11;

*see also* Req. Com. 4-5). The Patent Owner's erroneous assertion regarding

the disclosure of Wright '138 notwithstanding, the Patent Owner again

misapprehends the basis of the main rejection based on Wright '138 that was

affirmed in the Decision by arguing that Wright '138 does not include chains

so there is no need for stabilization by adding Busboom's control arm (Rhrg.

Req. 5-6).

5

Appeal 2013-002900
Reexamination Control 95/001,742
Patent US 6,935,093 B2

As noted, Wright '138 does not disclose a mechanism for adjusting
HOC (Dec. 14; Dec. 5, FF 1B-1D). Hence, we explained,

> [a]bsent such information, one of ordinary skill in the art would
> have logically considered known HOC adjustment mechanisms
> to implement in the mower of Wright. Busboom is one such
> known mechanism. When implementing the HOC adjustment
> mechanism of Busboom in the mower of Wright, we agree with
> the Examiner (RAN 4) that it would have been obvious to
> provide control arms that are sized to be appropriate to the
> application so that when applied to the compact standing
> mower of Wright which has a compact frame, the control arms
> would be shorter than that disclosed in Busboom. (RAN 8).

(Dec. 14-15).

Finally, the Patent Owner argues that there are no chains in Cox or

Musgrave either so that there is nothing to stabilize (Rhrg. Req. 6-7).

However, the Patent Owner again misses the point that Wright '138 does not

disclose a mechanism for HOC adjustment, and that the affirmed rejection is

based on using the known HOC adjustment mechanism of Busboom.


REHEARING DECISION

While we have considered the Decision in light of the Request for

Rehearing, and have elaborated on certain aspects of the Decision, we

decline to modify it in any respect.


DENIED

6

Appeal 2013-002900
Reexamination Control 95/001,742
Patent US 6,935,093 B2

ack
PATENT OWNER:

NIXON & VANDERHYE PC
901 North Glebe Road
11th Floor
Arlington, VA 22203

THIRD PARTY REQUESTER:

James W. Miller
527 Marquette Avenue
Suite 1960, Rand Tower
Minneapolis, MN 55402

7

# EXHIBIT 3



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,741 | 09/06/2011 | 6,438,931 | 26.0.3.317/A | 3341 |

7590    06/21/2013

NIXON & VANDERHYE PC
901 NORTH GLEBE ROAD
11th FLOOR
ARLINGTON, VA 22203

| EXAMINER |
|---|
| JASTRZAB, JEFFREY R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/21/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

THE TORO COMPANY
Requester, Cross-Appellant, Respondent

v.

WRIGHT MANUFACTURING, INC.
Patent Owner, Appellant, Respondent

Appeal 2013-002864
*Inter partes* Reexamination Control 95/001,741
Patent US 6,438,931 B1[1]
Technology Center 3900

*Before* RICHARD M. LEBOVITZ, JEFFREY B. ROBERTSON and
DANIEL S. SONG, *Administrative Patent Judges.*

SONG, *Administrative Patent Judge*

DECISION ON APPEAL

---

[1] Patent US 6,438,931 B1 (hereinafter "'931 patent") issued August 27, 2002,
to Velke et al.

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

### STATEMENT OF THE CASE

Claims 1-40 stand rejected and are the subject of the present appeal, claims 15-40 having been added during the reexamination (RAN[2] PTOL-2066; ABPO 3; CABR 1). The Patent Owner appeals under 35 U.S.C. §§ 134(b) and 315 (2002) from the rejection of claims 1-40 as discussed *infra*. The Requester cross-appeals under 35 U.S.C. §§ 134 and 315 from the Examiner's refusal to enter various proposed rejections of claims 1-7 and 9-14 (CABR 1). We have jurisdiction under 35 U.S.C. §§ 134(b) and 315.

In addition to their respective briefs, the Patent Owner also relies on the declaration of inventor William R. Wright while the Requester also relies on the declaration of Garry Busboom, who is a named inventor of an applied prior art and employee of Exmark Manufacturing Company, Inc., which is a wholly owned subsidiary of the Requester (Resp. Br. R 1). We also note that the '931 patent is involved in the legal action *Wright Manufacturing, Inc. v. The Toro Company and Exmark Manufacturing Company, Inc.*, 11-cv-01373-MJG (D. Maryland) which has been stayed pending the outcome of the present reexamination proceedings (ABPO 2; CABR 1).

---

[2] Because the Examiner's Answer mailed September 24, 2012 merely incorporates the Right to Appeal Notice mailed May 2, 2012, we refer to the same in this decision. We also refer to and address only specific portions of the record necessary to the disposition of the appeal, abbreviating the documents as follows:
1. Right of Appeal Notice = RAN
2. Appeal Brief of Patent Owner = ABPO
3. Rebuttal Brief of Patent Owner = Reb. Br. PO
4. Respondent Brief of Patent Owner = Resp. Br. PO
5. Cross-Appeal Brief of Requester = CABR
6. Respondent Brief of Requester = Resp. Br. R

2

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

The application that issued as the '931 patent is the parent of a continuation application which issued as US 6,935,093 and is the subject of Reexamination Control 95/001,742 and Appeal No. 2013-002900 (ABPO 2; CABR 1). A combined oral hearing with the representatives of the Patent Owner and Requester with respect to the present case and the related case was held before the Patent Trial and Appeal Board on May 1, 2013, and a transcript thereof will be entered into the electronic record in due course. The Board's decision with respect to Appeal No. 2013-002900 is mailed concurrently with this decision.

We AFFIRM with respect to the Appeal of the Patent Owner. In addition, because our decision with respect to the Appeal of the Patent Owner maintains the rejections of all of the claims, we do not reach the Requester's Cross-Appeal.[3]

---

[3] In presenting the Requester's cross-appeal during the Oral Hearing, the Requester's representative Mr. Miller stated:

> MR. MILLER: ...
> Well, with that, we think that if you tipped -- you know, this whole set of rejections that are at issue in the cross-appeal are moot in a sense, if the basic set of rejections is maintained. They were proposed because in the inter partes reexamination due to the estoppel effect, you need to make the arguments.
> I think they are good rejections, should the first set of rejections be, for some reason, not upheld, but like I said, I think they are moot in the event the main set of rejections would be upheld.

3

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

## THE INVENTION

The '931 patent describes a mower and representative independent

claim 9 reads as follows (ABPO, Claims App'x, emphasis added):

9.      A power mower comprising:
at least one drive wheel;
an engine deck structure upon which an engine is
mounted;
a cutter deck assembly for housing one or more cutting
blades for cutting grass;
*a deck lift system for raising and lowering the cutter deck
assembly, the engine deck, and the engine together as a unit* in
order to adjust a blade cutting height of the mower; and
wherein *a control arm*, for helping provide lateral
positioning of the cutter deck assembly during the raising and
lowering, *is short enough in length so that pivoting of the
control arm an angle φ of fifteen (15) degrees during raising or
lowering of the cutter deck assembly causes the cutter deck
assembly to move a vertical distance "d" of no more than about
2.5 inches.*

Independent claim 1 is similar to claim 9, but further specifies "zero

radius turn[]" capability and requires control arms be attached to one of the

cutter deck and the engine deck.

## PRIOR ART

The prior art in the appeal record is:

| | | |
|---|---|---|
| Wright | 5,507,138 | Apr. 16, 1996 |
| Musgrave | 3,460,325 | Aug. 12, 1969 |
| Busboom | 5,816,033 | Oct. 6, 1998 |
| Hale | 3,402,536 | Sep. 24, 1968 |
| Hale | 3,408,798 | Nov. 5, 1968 |
| Velke | 5,809,755 | Sep. 22, 1998 |
| Velke | 5,984,031 | Nov. 16, 1999 |

4

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

| Berrios | 5,653,466 | Aug. 5, 1997 |
| Cox | Australia 271377 | Nov. 18, 1965 |

Exmark Manufacturing Company, Inc., "*Lazer Z Brochure*", 1995

## FINDINGS OF FACT

The record supports the following findings of fact (FF) by a preponderance of the evidence.

1. A.  Wright discloses a zero turn radius mower wherein the "[m]ower deck 9 is mounted on and below frame 11 in front of engine 7 and engine deck 13[,]" and further discloses that "mower deck 9 is mounted on and connected to both engine deck 13 and frame 11" (col. 4, ll. 27-34; Fig. 2).

   B.  However, Wright does not disclose the manner in which the mower deck is mounted/connected to the frame and engine deck, or require that the mower deck be fixed in position relative to the engine deck so as to preclude relative movement therebetween.

   C.  Wright also states that "[m]ower deck 9 (or alternatively the mower wheels) is vertically movable or adjustable so as to adjust the height of the cut." (Col. 4, ll. 36-39).

   D.  However, Wright does not specifically disclose the details of the height of cut adjustment mechanism.

2. A.  Busboom discloses a zero turn radius mower including a mower deck height control for adjusting the height of cut (Abst.; Figs. 1, 3, 4).

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

B.   The mower 10 of Busboom includes a frame means 12, an
engine support deck 18, an engine 20 and a mower deck 28 (col. 2,
ll. 52-60; col. 2, l. 66-col. 3, l. 1; Figs. 1, 3).

C.   Busboom discloses that the mower deck is supported by a
plurality of chain members 42 which are connected to a mower
deck height control mechanism 44 that enables the mower deck to
be raised or lowered with respect to the frame 12 (col. 3, ll. 4-9;
Figs. 1, 3).

D.   Busboom teaches that the deck height control mechanism 44
further includes lift arms 82, 76 to which the chain members 42 are
secured, and is operated by actuation of a control lever 54 (col. 3, ll.
20-32; col. 3, ll. 45-49; Fig. 4).

E.   Busboom also teaches that the mower 10 includes a stabilizer
rod 40 that connects mower deck 28 to frame 12 "in conventional
fashion." (Col. 3, ll. 2-4; Fig. 3).


3. A.   Cox discloses a mower with an adjustable frame 24, an engine
mounted to the adjustable frame 24, and a rotor disc 31 with blades
32 (pg. 4, ll. 5-18; Figs. 1, 2).

B.   Cox teaches that the height of cut is adjusted by raising and
lowering the adjustable frame 24 via height adjustment lever 33
which changes the height of the rotor and blades (pg. 4, ll. 19-22;
Figs. 1, 2).  Thus, the engine mounted on the adjustable frame 24 is
also raised and lowered.

6

4. A.  Musgrave discloses a mower including a motor 21 mounted on
plate 20 and a mower deck 50 mounted to plate extensions 37 of
plate 16 with slots 13 (col. 2, ll. 17-26, 38-44; col. 3, ll. 25-28; col.
4, ll. 55-61; Figs. 1, 2).

B.  Musgrave teaches that the vertical height adjustment is attained
by raising or lowering the entire connected structure including the
motor, plate 20 and mower deck 50 (col. 4, ll. 55-63; Figs. 1, 2).

5.  Hale '536 discloses a vehicle 20 with a mower unit 36 which is
connected to linkage members 136 (i.e., control arms) to rear axle 26
(col. 2, ll. 25-37; col. 4, ll. 53-66).

6.  Hale '798 discloses a mower with a circular mower frame 94
(i.e., mower deck) which is connected to control arms 86, 87 that are
connected to a support bar 83 (col. 4, l. 68-col. 5, l. 12; Figs. 1, 2, 6).

7. A.  Velke '031 discloses a zero-turning radius mower with a cutter
deck 1, an engine 9 mounted on an engine deck 3 and a standing
platform 18 (col. 5, ll. 13-16, 32-46; Figs. 1, 2).

B.  Velke '031 states that "the mower and cutter decks are separate
structures for performing different functions" (col. 5, ll. 32-33), and
that the cutting deck 1 is mounted to the engine deck 3 (col. 11, l.
66-col. 12, l. 2).

C.  In the mower of Velke '031, the height of cut adjustment is
disclosed as being achieved by adjusting the mounting position of

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

> the wheel motor brackets 157 for the rear drive wheels 7 along numerous mounting holes 169 provided, together with adjusting the vertical position of the front caster wheels 5 (col. 5, ll. 32-46; col. 11, ll. 52-58; Figs. 1, 3, 10).

## PRINCIPLES OF LAW

In *KSR*, the Supreme Court reaffirmed principles based on its precedent that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007). The Court also stated that "when a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result." *Id.* The Court also explained that "[w]hen a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, §103 likely bars its patentability." *Id.* at 417. The Court further noted that "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton." *Id.* at 421.

8

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

EXAMINER'S REJECTIONS

The Examiner rejects the following claims of the '741 patent under 35 U.S.C. § 103(a) as obvious over the cited prior art references:[4]

5.   Claims 1-3, 7, 9-11 and 13 over Wright in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798.

6.   Claims 4-6 and 12 over Wright, Cox, Musgrave, Busboom, Hale '536 and Hale '798 in view of Lazer Z.

7.   Claim 8 over Wright, Cox, Musgrave, Busboom, Hale '536 and Hale '798 in view of Velke '755.

8.   Claim 14 over Wright, Cox, Musgrave, Busboom, Hale '536 and Hale '798 in view of Berrios.

9.   Claims 1-3, 7, 9-11 and 13 over Velke '031 in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798.

10.  Claims 4-6 and 12 over Velke '031, Cox, Musgrave, Busboom, Hale '536 and Hale '798 in view of Lazer Z.

11.  Claim 8 over Velke '031, Cox, Musgrave, Busboom, Hale '536 and Hale '798 in view of Velke '755.

12.  Claim 14 over Velke '031, Cox, Musgrave, Busboom, Hale '536 and Hale '798 in view of Berrios.

14.  Claims 1-3, 7, 9-11, 13 and 14 over Cox in view of Busboom, Hale '536 and Hale '798.

15.  Claims 4-6 and 12 over Cox, Busboom, Hale '536 and Hale '798 in view of Lazer Z.

---

[4] For clarity, the following enumerated Rejections utilize numbering that corresponds to the numbering of the "Issues" used by the Patent Owner in its briefs and by the Examiner in the RAN.

9

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

16. Claims 1-3, 7, 9-11, 13 and 14 over Musgrave in view of Busboom, Hale '536 and Hale '798.

17. Claims 4-6 and 12 over Musgrave, Busboom, Hale '536 and Hale '798 in view of Lazer Z.

26. Claims 15-20, 22-23, 30-31, 33, 35 and 37-40 over Wright in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798.

27. Claims 28-29 over Wright, Cox, Musgrave, Busboom, Hale '536, Hale '798 and Velke '755.

28. Claim 34 over Wright, Cox, Musgrave, Busboom, Hale '536, Hale '798 and Velke '031 or Berrios.

29. Claims 15-20, 22-23, 30-31, 33-35 and 37-40 over Velke '031, Cox, Musgrave, Busboom, Hale '536 and Hale '798.

30. Claims 28-29 over Velke '031 in view of Cox, Musgrave, Busboom, Hale '536, Hale '798 and Velke '755.

31. Claims 21, 24-27, 32 and 36 over Wright in view of Cox, Musgrave, Busboom, Hale '536, and Hale '798.

32. Claims 21, 24-27, 32 and 36 over Velke '031 in view of Cox, Musgrave, Busboom, Hale '536, and Hale '798.

## ISSUES

The following dispositive issues have been raised in the present appeal:

1.    Whether the Examiner erred in concluding that the claims are obvious principally based on the combination of Wright in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798.

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

    2.     Whether the Examiner erred in concluding that the claims are obvious principally based on the combination of Velke '031 in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798.

## ANALYSIS

### *Rejections 5-8, 26-28 and 31*

Rejections 5-8, 26-28 and 31 are all based principally on the combination of Wright in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798. Both of the independent claims 1 and 9, as well as claims 2, 3, 7, 10, 11 and 13 that ultimately depend therefrom, stand rejected in Rejection 5 as unpatentable over this combination of prior art (RAN 2-10). The Examiner finds that Wright teaches a zero turn radius mower with a foot platform where the mower deck is "mounted on and connected to" the engine deck and the frame (RAN 2; *see also* FF 1A). However, the Examiner concedes that Wright "fails to teach that vertical adjustment of the mower deck enables movement of both the engine and the mower as one unit and fails to teach the specifics of the vertical deck adjustment mechanism." (RAN 2-3) (i.e., the recited "deck lift system for raising and lowering the cutter deck assembly, the engine deck, and the engine together as a unit in order to adjust a blade cutting height of the mower" of the claims). Indeed, while Wright suggests including a mechanism for adjusting the height of cut (also referred to herein as "HOC"), it does not actually disclose a specific mechanism for doing so (FF 1B-1D).

For the actual HOC adjustment mechanism and the control arm, the Examiner relies Busboom that discloses a mower with "bell cranks 82, 104

11

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

and 76, 86, deck suspension chains 42, counterbalance springs 96, adjustment handle 54, height control pin 106[,] and control arms 40 pivotally connected to the mower deck (Figure 3)." (RAN 3). The Examiner concludes that "[i]t would have been obvious to one having ordinary skill in the art at the time of the invention, given the Wright suggestion of vertical height adjustability to have incorporated the Busboom HOC structures into the mower of Wright '138 as a mere substitution of known mechanisms for making mower decks 'vertically moveable or adjustable.'" (RAN 3; *see also* FF 2A-2E). The Examiner also finds that HOC adjustment in which "the engine moves with the cutting deck were well known in the art at the time of the invention" as evidenced by both Cox and Musgrave (RAN 3; *see also* FF 3A-4B). The Examiner states that given the teachings of Cox and Musgrave, "it would have been obvious to have arranged the modified Wright HOC adjustment to allow for the engine to move in concert with the deck structure as such HOC structures were well established alternatives for allowing an operator to change the cutting height." (RAN 3).

The Examiner concedes that "Wright as modified by Busboom, Cox and Musgrave would not necessarily provide for the claimed control arm length[.]" (RAN 3). However, the Examiner finds that Hale '536 and Hale '798 establish that different length control arms were known in the art and states that "[g]iven these combined teachings, merely adjusting the control arm length in the modified Wright system would have amounted to an obvious choice in engineering design in order to effect a desired range of vertical height adjustment." (RAN 4; *see also* FF 5, 6).

12

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

Thus, the Examiner's position is that it would have been obvious to apply the HOC adjustment mechanism of Busboom including the disclosed chains and control arm to provide stable, vertical adjustability to the deck of Wright wherein the engine moves with cutting deck as known in the art as demonstrated by Cox/Musgrave. The Examiner's position is supported by a preponderance of the evidence. We address the Patent Owner's arguments *infra*.

The Patent Owner argues that even if the prior art references are combined, such combination does not result in the recited angle because the control arm of Busboom is too long (ABPO 11-12; *see also* Decl. of Wright ¶ 6). According to the Patent Owner, Busboom requires a control arm in order to stabilize the mower deck which is suspended by chains, and requires the long length to prevent slackening or tightening of the belt by minimizing fore/aft movement during raising and lowering of the mower deck (ABPO 12-13; *see also* Decl. of Wright, ¶ 7). In contrast, the Patent Owner asserts that in the claimed invention, engine and deck moves together so that slack in the belt is not an issue (ABPO 13). The Patent Owner argues that there is no teaching or suggestion to adjust control arm length or recognition that it is a result effective variable that is to be optimized (ABPO 14). The Patent Owner further argues that both of the Hale references are directed to automatic leveling systems that cannot be implemented in Wright (App. Br. 15-16).

The Patent Owner's arguments are unpersuasive because they do not take into account what the collective teachings of the prior art. *See In re Keller*, 642 F.2d 413, 425 (CCPA 1981) ("The test for obviousness is not

13

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference; nor is it that the claimed invention must be expressly suggested in any one or all of the references. Rather, the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art"). It is not necessary that the inventions of the references must be physically combinable, without change, to render obvious the invention under review. *See In re Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983).

As the Examiner noted, Wright suggests a mechanism for adjusting the height of the mower deck, but fails to disclose the specifics thereof (FF 1C, 1D). Absent such information, one of ordinary skill in the art would have logically considered known HOC adjustment mechanisms to implement in the mower of Wright. Busboom is one such known mechanism. When implementing the HOC adjustment mechanism of Busboom in the mower of Wright, we agree with the Examiner (RAN 4) that it would have been obvious to provide control arms that are sized to be appropriate to the application so that when applied to the compact standing mower of Wright which has a compact frame, the control arms would be shorter than that disclosed in Busboom.[5] (RAN 5). In this regard, we agree with the Requester that "[t]he logical reason for making the control arms shorter was merely to fit them into the more compact form of mower that

---

[5] While not forming the basis of our decision, we also observe that size is not ordinarily a patentable feature. *In re Rose*, 220 F.2d 459, 463 (CCPA 1955) ("size of the article under consideration [] is not ordinarily a matter of invention"); *see also Gardner v. TEC Systems, Inc.,* 725 F.2d 1338, 1346, (Fed. Cir. 1984); *In re Kirke,* 40 F.2d 765, 767 (CCPA 1930).

14

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

Wright had **already** invented and patented '138 - to fit what Owner
acknowledges in Wright '138 was the 'reduced overall length ' of the
mower." (Resp. Br. R 9).  We further agree with the Examiner (RAN 6) that
the resultant application of the control arm into the existing compact
structure satisfies the recited stabilization function.

The Patent Owner also argues that a person of ordinary skill in the art
would not provide Busboom's control arm in the mower of Wright because
there is no room and it would require substantial reconstruction and redesign
rendering Wright unsuitable for its intended purpose of providing compact
stand-on mower (ABPO 18-20).  Again, these arguments are unpersuasive
because they are based on bodily incorporation and fail to consider the
combined teachings of the art and the skill of one of ordinary skill in the art.
*See In re Keller*, 642 F.2d at 425; *In re Sneed*, 710 F.2d at 1550.  Persuasive
evidence has not been provided that implementing Busboo's HOC
adjustment mechanism in Wright's mower by appropriately sizing it to fit
would have been beyond the skill of those in the art.  *KSR*, 550 U.S. at 417.

The Patent Owner contends that Wright has no chains and there is no
need to provide a control arm because "the cutter deck 9 in Wright is already
structurally connected to engine deck 13 and frame 11." (ABPO 18, 23).
The Patent Owner further argues that neither Cox nor Musgrave discloses
any uncontrolled lateral movement and "[o]ne would not have added a
control arm to Wright/Musgrave or Wright/Cox to address an alleged
problem that did not exist or, at worst, was already solved." (ABPO 24-25).

However, as noted above, while Wright suggests a HOC adjustment
mechanism, it does not disclose a particular mechanism.  Hence, when the

15

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

HOC adjustment mechanism of Busboom which includes chains is implemented in the mower of Wright, a person of ordinary skill in the art would have also provided a stabilizer rod (i.e., a control arm) disclosed in Busboom for stabilization of the mower deck. While the mower of Wright discloses that the "mower deck 9 is mounted on and connected to both engine deck 13 and frame 11" (FF 1A), this does not preclude relative movement between the mower deck and the engine deck (*see* Resp. Br. PO 11-12 (Patent Owner agreeing with the Examiner that the mower deck and the engine deck of Wright can be "mounted on" each other and "connected," but "not necessarily move up/down together as one unit.")[6]; *see also* FF 4A, 4B). Wright also does not teach against the use of a mower deck supported by chains which is well-known in the art and indeed present in the Busboom mower (*see* Busboom, Figs. 3, 4) and not in dispute between the parties. Thus, while the Patent Owner asserts that a control arm may not be necessary in a mower based on the combination of Wright/Musgrave or Wright/Cox, when the mower deck height control mechanism 44 of Busboom with its chains is implemented in the Wright's mower to provide the various functions thereof, a control arm would be desirable to stabilize the mower deck.

The Patent Owner also argues that Wright criticizes sit-down mowers like that of Busboom (ABPO 18-20). However, while Wright may criticize

---

[6] In response to questioning regarding relative movement between the engine, the engine deck and the cutting deck in the mower of Wright, the Patent Owner's legal representative Mr. Rhoa also stated:

MR. RHOA: Wright 138, yes. Is it possible that there is some movement there between? Yes, it's possible.

16

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

sit-down mowers because of high centers of gravity and the difficulty of users in ducking under low hanging tree limbs (*see* Wright, col. 1, l. 60-col. 2, l. 6), this teaching does not provide a correlation between the HOC adjustment mechanisms known in the art and the seating position of the user. Thus, the criticism in Wright with respect to seating position would not dissuade one of ordinary skill in the art from implementing the HOC adjustment mechanism that is also taught in Busboom. Furthermore, as noted by the Requester, Wright '138 also "criticizes" many different kinds of mowers which would, according to the Patent Owner's logic, result in the untenable position of removing a substantial body of art pertinent to mowers from consideration (Resp. Br. R 15 and citations therein). Nonetheless, a known or obvious product "does not become patentable simply because it has been described as somewhat inferior to some other product for the same use." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994).

Finally, the Patent Owner takes issue with the Examiner's statement that "[g]iven these combined teachings, merely adjusting the control arm length in the modified Wright system would have amounted to an obvious choice in engineering design in order to effect a desired range of vertical height adjustment." (RAN 4). The Patent Owner argues that the "proposed rationale for the alleged shortening of Busboom's control arm length is technically inaccurate and fundamentally flawed" because the length of the control arm in Busboom "does ***not*** determine or effect the range of vertical height adjustment of the cutter deck." (ABPO 17, *citing* Decl. of Wright ¶ 8). The Patent Owner argues that "the length of control arm 40 in Busboom

17

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

has nothing to do with determining/effecting the range of vertical height adjustment of the cutter deck." (ABPO 18).

We are not persuaded that the Examiner erred. Firstly, the Patent Owner misstates the Examiner. The Examiner did not say that the control arm "*determine[s]* or effect the range of vertical height adjustment *of the cutter deck*" as asserted by the Patent Owner (emphasis added). Secondly, the Examiner stated that the phrase has been taken "out of context" by the Patent Owner and in view of the apparent misunderstanding, explained that "[c]learly it is not the control arms that control the height adjustment. In the proposed rejection, the control arms allow, thus effect, *the vertical height range that was claimed for the control arms*, but do not actually perform, i.e. directly cause the height adjustment." (RAN 6, emphasis added). In other words, by virtue of their connection to the mower deck, the control arms move as the vertical height of the mower deck is adjusted to result in the vertical height adjustment range *of the control arm* of "no more than about 2.5 inches" as articulated in the claims. Indeed, the paragraph in which the statement at issue occurs sets the context by beginning with the statement that "Wright as modified by Busboom, Cox and Musgrave would not necessarily provide for the claimed control arm length, i.e. that they are short enough such that 15 degree angular movement *corresponds to 2.5 inches of vertical adjustment as claimed*." (RAN 3-4, emphasis added). Thus, we agree with the Examiner that the Patent Owner has taken the statement at issue "out of context," and the Examiner has adequately clarified the statement misunderstood by the Patent Owner.

18

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

Thirdly, the crux of the Examiner's articulated reason for the rejection is that "merely adjusting the control arm length in the modified Wright system would have amounted to an obvious choice in engineering design" based on the evidence of record including Busboom and the Hale references (RAN 3-4). In this regard, the Examiner also stated that:

> Those having ordinary skill in the art would have understood that in incorporating the HOC structures of a sitting mower into a more compact standing mower as Wright as suggested in the rejection, that certain aspects would have needed to be adjusted to accommodate the parts... Plainly, those in the art would have understood that moving the Busboom HOC structures to a compact frame would have required shorter control arms, especially when the art was well aware that different frame structures require different length control arms as evidenced by the Hale patents.
> (RAN 5).

In addition, the Examiner further stated that:

> Those having ordinary skill in the art would have understood that when stabilization was required, control arms can be used as evidenced by any of Busboom or the Hale patents. Clearly it can be gleaned from those teachings that control arms do not have a finite length, but are instead dependent upon the distance between the mower deck and the portion of the frame that the engineer/designer sees fit to establish the requisite degree of stability. When attempting to stabilize in a more compact mower design such as Wright's, it is only reasonable to conclude that those in the art would have understood that shorter control arms would have been required to fit into that more compact system.
> (RAN 6-7).

Finally, we highlight the fact that the explanation for the statement at issue was first provided in the Action Closing Prosecution of February 25, 2012, pages 4-6. Thus, the Patent Owner had ample opportunity to respond,

19

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

and the Patent Owner did respond, to the substance of the rejection as
discussed above. To the extent that the Patent Owner believes that the
clarification changed the ground of rejection as articulated in the Non-Final
Office Action, the Patent Owner could have petitioned to have the rejection
denominated as a new ground of rejection and prosecution reopened.

As to claim 7, the Patent Owner does not provide any separate
arguments as to its patentability. As to claims 2 and 3, the Patent Owner
observes that these claims require control arms that are even shorter than
that of claim 1, and further notes that claims 9-11 and 13 differ from claim 1
(ABPO 25-26). However, the Patent Owner does not proffer arguments with
respect to these claims that substantively differ from those considered.

In view of the above, the Examiner has set forth a *prima facie* case of
obviousness with respect to Rejection 5 which was not rebutted by Patent
Owner considering the totality of the evidence. We therefore affirm the
Examiner. The Patent Owner relies on the same arguments with respect to
Rejections 6-8, 26-28 and 31 (ABPO 26-27, 46-47) which are also
principally based on the combination of Wright in view of Cox, Musgrave,
Busboom, Hale '536 and Hale '798. Thus, we affirm those rejections as
well.

### *Rejections 9-12, 29, 30 and 32*

Rejections 9-12, 29, 30 and 32 are all principally based on the
combination of Velke '031 in view of Cox, Musgrave, Busboom, Hale '536
and Hale '798. Both of the independent claims 1 and 9, as well as claims 2,
3, 7, 10, 11 and 13 that ultimately depend therefrom, stand rejected in

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

Rejection 9 as unpatentable over the combination of Velke '031, Cox,

Musgrave, Busboom, Hale '536 and Hale '798 (RAN 14-17).

The Examiner's rejection is substantively similar to Rejection 5 except

that prior art reference Velke '031 is substituted for Wright (RAN 17; ABPO

27, 28). In particular, the Examiner finds that Velke '031 teaches a zero turn

radius mower with a foot platform wherein height of cut is adjusted by

changing the mounting each front caster wheel and wheel/drive motor using

mounting holes (FF 7A, 7C). Hence, Velke '031 differs from Wright

discussed *supra* in that Velke '031 does disclose an HOC adjustment

mechanism. The Examiner concludes that using the HOC adjustment

mechanism of Busboom instead of that provided in Velke '031 is a "mere

substitution of known mechanisms for making mower decks vertically

moveable or adjustable and to incorporate the added bonus of ease of

adjustment to Velke ['031]." (RAN 15). As to the provision of a control arm

and the length thereof, the disagreement and arguments between the Patent

Owner and the Examiner are substantively the same as those discussed *supra*

relative to Rejection 5 (RAN 15-RAN 17; ABPO 27-33).

For the reasons substantially similar to those already discussed *supra*

relative to Rejection 5, we find no error in the Examiner's rejection. We

further add that providing ease of adjustment as articulated by the Examiner

is another rational reason for implementing the HOC adjustment mechanism

of Busboom that uses a lever, the HOC adjustment in Velke '031 of

adjusting each wheel height being cumbersome in comparison (*see* Resp. Br.

R 18-19). We further agree with the Examiner that modification of the

21

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

length of the control arm would have been obvious to one of ordinary skill in the art for the reasons already discussed.

Correspondingly, we find that the Examiner has set forth a *prima facie* case of obviousness with respect to Rejection 9 and we sustain the same. The Patent Owner relies on the same arguments with respect to Rejections 10-12, 29, 30, 32 (ABPO 33-34, 47-48) which are also principally based on the combination of Velke '031 in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798. Thus, we affirm those rejections as well.

### Rejections 14 and 15

Rejections 14 and 15 are principally based on the combination of Cox in view of Busboom, Hale '536 and Hale '798. However, we decline to reach these rejections, all of the claims on appeal remaining rejected as obvious principally based on the combination of Wright in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798, and also principally based on the combination of Velke '031 in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798.

### Rejections 16 and 17

Rejections 16 and 17 are principally based on the combination of Musgrave in view of Busboom, Hale '536 and Hale '798. We again decline to reach Rejections 16 and 17, all of the claims on appeal remaining rejected as obvious principally based on the combination of Wright in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798, and also principally based on

22

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

the combination of Velke '031 in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798.

## CONCLUSIONS

1.    The Examiner did not err in concluding that the claims are obvious principally based on the combination of Wright in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798, and thus, Rejections 5-8, 26-28 and 31 are AFFIRMED.

2.    The Examiner did not err in concluding that the claims are obvious principally based on the combination of Velke '031 in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798, and thus, Rejections 9-12, 29, 30 and 32 are AFFIRMED.

3.    We do not reach Rejections 14 and 15.

4.    We also do not reach Rejections 16 and 17.

5.    We further do not reach the Cross-Appeal of the Requester.

Requests for extensions of time in this *inter partes* reexamination proceeding are governed by 37 C.F.R. §§ 1.956.

## AFFIRMED

Appeal 2013-002864
Reexamination Control 95/001,741
US 6,438,931 B2

PATENT OWNER:

NIXON & VANDERHYE PC
901 North Glebe Road
11th Floor
Arlington, VA  22203

THIRD PARTY REQUESTER:

James W. Miller
527 Marquette Avenue
Suite 1960, Rand Tower
Minneapolis, MN  55402

**EXHIBIT 4**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,742 | 09/06/2011 | 6,935,093 | JAR-3696-82 | 3410 |

23117        7590        06/21/2013
NIXON & VANDERHYE, PC
901 NORTH GLEBE ROAD, 11TH FLOOR
ARLINGTON, VA 22203

| EXAMINER |
|---|
| JASTRZAB, JEFFREY R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/21/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE PATENT TRIAL AND APPEAL BOARD

---

THE TORO COMPANY
Requester, Cross-Appellant, Respondent

v.

WRIGHT MANUFACTURING, INC.
Patent Owner, Appellant, Respondent

---

Appeal 2013-002900
*Inter partes* Reexamination Control 95/001,742
Patent US 6,935,093 B2[1]
Technology Center 3900

---

*Before* RICHARD M. LEBOVITZ, JEFFREY B. ROBERTSON and
DANIEL S. SONG, *Administrative Patent Judges.*

SONG, *Administrative Patent Judge*

DECISION ON APPEAL

---

[1] Patent US 6,935,093 B2 (hereinafter "'093 patent") issued August 30, 2005, to Velke et al.

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

STATEMENT OF THE CASE

Claims 1, 3, 4 and 6-17 stand rejected and are the subject of the present appeal. Claims 2 and 5 have been canceled, and claims 7-17 were added during the reexamination (RAN[2] PTOL-2066; ABPO 3; CABR 1). The Patent Owner appeals under 35 U.S.C. §§ 134(b) and 315 (2002) from the rejection of claims as discussed *infra*. The Requester cross-appeals under 35 U.S.C. §§ 134 and 315 from the Examiner's refusal to enter proposed rejections of claims 1, 3, 4 and 6-17 (CABR 1). We have jurisdiction under 35 U.S.C. §§ 134(b) and 315.

In addition to their respective briefs, the Patent Owner also relies on the declaration of inventor William R. Wright while the Requester also relies on the declaration of Garry Busboom, who is a named inventor of an applied prior art and employee of Exmark Manufacturing Company, Inc., which is a wholly owned subsidiary of the Requester (Resp. Br. R 1). We also note that the '093 patent is involved in the legal action *Wright Manufacturing, Inc. v. The Toro Company and Exmark Manufacturing Company, Inc.*, 11-

---

[2] Because the Examiner's Answer mailed September 24, 2012 merely incorporates the Right to Appeal Notice mailed May 2, 2012, we refer to the same in this decision. We also refer to and address only specific portions of the record necessary to the disposition of the appeal, abbreviating the documents as follows:

1. Right of Appeal Notice = RAN
2. Appeal Brief of Patent Owner = ABPO
3. Rebuttal Brief of Patent Owner = Reb. Br. PO
4. Respondent Brief of Patent Owner = Resp. Br. PO
5. Cross-Appeal Brief of Requester = CABR
6. Respondent Brief of Requester = Resp. Br. R

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

cv-01373-MJG (D. Maryland) which has been stayed pending the outcome
of the present reexamination proceedings (ABPO 2; CABR 1).

The application that issued as the '093 patent is a continuation of an
application which issued as US 6,438,931 and is the subject of
Reexamination Control 95/001,741 and Appeal No. 2013-002864 (ABPO 2;
CABR 1). A combined oral hearing with the representatives of the Patent
Owner and Requester with respect to the present case and the related case
was held before the Patent Trial and Appeal Board on May 1, 2013, and a
transcript thereof will be entered into the electronic record in due course.
The Board's decision with respect to Appeal No. 2013-002864 is mailed
concurrently with this decision.

We AFFIRM with respect to the Appeal of the Patent Owner. In
addition, because our decision with respect to the Appeal of the Patent
Owner maintains the rejections of all of the claims, we do not reach the
Requester's Cross-Appeal.[3]

---

[3] In presenting the Requester's cross-appeal during the Oral Hearing, the
Requester's representative Mr. Miller stated:

> MR. MILLER: ...
> Well, with that, we think that if you tipped -- you know, this
> whole set of rejections that are at issue in the cross-appeal are moot in
> a sense, if the basic set of rejections is maintained. They were
> proposed because in the inter partes reexamination due to the estoppel
> effect, you need to make the arguments.
> I think they are good rejections, should the first set of rejections
> be, for some reason, not upheld, but like I said, I think they are moot
> in the event the main set of rejections would be upheld.

3

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

## THE INVENTION

The '093 patent describes a mower and representative independent claim 1 reads as follows (ABPO, Claims App'x, with underlining showing added subject matter and bracketing showing deleted subject matter relative to the originally issued patent claims, italics added):

1.  A self-propelled power lawn mower comprising:
    a pair of rear drive wheels;
    a cutter deck assembly;
    an engine deck assembly supporting a combustion engine;
    a foot platform for supporting a standing operator of the mower;
    a deck lift system for raising and lowering the cutter deck assembly, engine deck assembly, and combustion engine together in order to adjust a blade cutting height of the mower; [and]
    first and second pivoting control arms for helping provide lateral positioning of the cutter deck assembly, engine deck assembly, and combustion engine during the raising and lowering, wherein the first and second control arms are pivotally connected to either the cutter deck assembly or [[an]] the engine deck assembly, so as to pivot upward and downward along with corresponding upward and downward movement of the cutter deck assembly and combustion engine; and wherein the first and second pivoting control arms are located entirely forward of both (a) respective rear edges of said rear drive wheels, and (b) the foot platform for supporting the standing operator;
    wherein at least one of said *control arms pivots about a rear pivot axis, said rear pivot axis as viewed in side view being located* (i) forward of said foot platform, (ii) *forward of a rear end of the engine deck assembly*, and (iii) rearward of a front edge of at least one of the rear drive wheels; and
    *wherein pivoting of the control arms an angle φ of fifteen (15) degrees during raising or lowering of the cutter deck*

4

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

> *assembly and engine causes the cutter deck assembly to move a*
> *vertical distance "d" of no more than 2.5 inches.*

Independent claim 4 is substantively similar to claim 1.

## PRIOR ART

The prior art in the appeal record is:

| Hamouz | 3,672, 137 | June 27, 1972 |
| Wright | 5,507,138 | Apr. 16, 1996 |
| Musgrave | 3,460,325 | Aug. 12, 1969 |
| Busboom | 5,816,033 | Oct. 6, 1998 |
| Hale | 3,402,536 | Sep. 24, 1968 |
| Hale | 3,408,798 | Nov. 5, 1968 |
| Velke | 5,809,755 | Sep. 22, 1998 |
| Velke | 5,984,031 | Nov. 16, 1999 |
| Berrios | 5,653,466 | Aug. 5, 1997 |
| Cox | AU 271377 | Nov. 18, 1965 |
| Procomas | GB 2 013 073 A | Aug. 9, 1979 |

## FINDINGS OF FACT

The record supports the following findings of fact (FF) by a preponderance of the evidence.

1. A.  Wright discloses a zero turn radius mower wherein the "[m]ower deck 9 is mounted on and below frame 11 in front of engine 7 and engine deck 13[,]" and further discloses that "mower deck 9 is mounted on and connected to both engine deck 13 and frame 11" (col. 4, ll. 27-34; Fig. 2).

   B.  However, Wright does not disclose the manner in which the mower deck is mounted/connected to the frame and engine deck, or

5

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

require that the mower deck be fixed in position relative to the engine deck so as to preclude relative movement therebetween.

C.  Wright also states that "[m]ower deck 9 (or alternatively the mower wheels) is vertically movable or adjustable so as to adjust the height of the cut." (Col. 4, ll. 36-39).

D.  However, Wright does not specifically disclose the details of the height of cut adjustment mechanism.

2. A.  Busboom discloses a zero turn radius mower including a mower deck height control for adjusting the height of cut (Abst.; Figs. 1, 3, 4).

B.  The mower 10 of Busboom includes a frame means 12, an engine support deck 18, an engine 20 and a mower deck 28 (col. 2, ll. 52-60; col. 2, l. 66-col. 3, l. 1; Figs. 1, 3).

C.  Busboom discloses that the mower deck is supported by a plurality of chain members 42 which are connected to a mower deck height control mechanism 44 that enables the mower deck to be raised or lowered with respect to the frame 12 (col. 3, ll. 4-9; Figs. 1, 3).

D.  Busboom teaches that the deck height control mechanism 44 further includes lift arms 82, 76 to which the chain members 42 are secured, and is operated by actuation of a control lever 54 (col. 3, ll. 20-32; col. 3, ll. 45-49; Fig. 4).

6

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

> E.  Busboom also teaches that the mower 10 includes a stabilizer
> rod 40 that connects mower deck 28 to frame 12 "in conventional
> fashion." (Col. 3, ll. 2-4; Fig. 3).

> 3. A.  Cox discloses a mower with an adjustable frame 24, an engine
> mounted to the adjustable frame 24, and a rotor disc 31 with blades
> 32 (pg. 4, ll. 5-18; Figs. 1, 2).
> B.  Cox teaches that the height of cut is adjusted by raising and
> lowering the adjustable frame 24 via height adjustment lever 33
> which changes the height of the rotor and blades (pg. 4, ll. 19-22;
> Figs. 1, 2).  Thus, the engine mounted on the adjustable frame 24 is
> also raised and lowered.

> 4. A.  Musgrave discloses a mower including a motor 21 mounted on
> plate 20 and a mower deck 50 mounted to plate extensions 37 of
> plate 16 with slots 13 (col. 2, ll. 17-26, 38-44; col. 3, ll. 25-28; col.
> 4, ll. 55-61; Figs. 1, 2).
> B.  Musgrave teaches that the vertical height adjustment is attained
> by raising or lowering the entire connected structure including the
> motor, plate 20 and mower deck 50 (col. 4, ll. 55-63; Figs. 1, 2).

> 5.  Hale '536 discloses a vehicle 20 with a mower unit 36 which is
> connected to linkage members 136 (i.e., control arms) to rear axle 26
> (col. 2, ll. 25-37; col. 4, ll. 53-66).

7

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

6.      Hale '798 discloses a mower with a circular mower frame 94
(i.e., mower deck) which is connected to control arms 86, 87 that are
connected to a support bar 83 (col. 4, l. 68-col. 5, l. 12; Figs. 1, 2, 6).

7. A.   Velke '031 discloses a zero-turning radius mower with a cutter
deck 1, an engine 9 mounted on an engine deck 3 and a standing
platform 18 (col. 5, ll. 13-16, 32-46; Figs. 1, 2).
B.   Velke '031 states that "the mower and cutter decks are separate
structures for performing different functions" (col. 5, ll. 32-33), and
that the cutting deck 1 is mounted to the engine deck 3 (col. 11, l.
66-col. 12, l. 2).
C.   In the mower of Velke '031, the height of cut adjustment is
disclosed as being achieved by adjusting the mounting position of
the wheel motor brackets 157 for the rear drive wheels 7 along
numerous mounting holes 169 provided, together with adjusting the
vertical position of the front caster wheels 5 (col. 5, ll. 32-46; col.
11, ll. 52-58; Figs. 1, 3, 10).

8. A.   Velke '755 discloses a zero turn radius mower similar to that of
Wright including a mower deck 9 mounted on and below a frame
11 in front of an engine 7 and an engine deck 13 (col. 6, ll. 1-5; Fig.
2).
B.   Velke '755 also discloses a platform 71 for supporting the
standing operator between the rear drive wheels of the mower (col.
8, ll. 52-60; Figs. 2, 3, 5).

8

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

    C. In describing Figure 5, Velke '755 states

> the compartment of foot platform 71 undercuts the frame
> or engine deck 13 according to certain embodiments of
> this invention. See also FIGS. 2-4. As shown, the foot
> supporting surface 163 of platform 71 extends forwardly
> of and underneath of a portion of frame or deck 13 until
> reaching front or forward wall 159 of the foot platform
> compartment. Thus, space is saved in that the engine
> deck, pulley and belt assembly 161, and/or pumps 31, 33
> are located vertically above each of the operator's feet
> and a substantial portion (e.g. at least about 1-3 inches)
> of the foot platform. This both conserves space is [sic]
> and functions to protect the operator's feet from flying
> debris and the like.
> (Col. 13, ll. 23-35; Fig. 5).

## PRINCIPLES OF LAW

In *KSR*, the Supreme Court reaffirmed principles based on its
precedent that "[t]he combination of familiar elements according to known
methods is likely to be obvious when it does no more than yield predictable
results." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007). The Court
also stated that "when a patent claims a structure already known in the prior
art that is altered by the mere substitution of one element for another known
in the field, the combination must do more than yield a predictable result."
*Id.* The Court also explained that "[w]hen a work is available in one field of
endeavor, design incentives and other market forces can prompt variations of
it, either in the same field or a different one. If a person of ordinary skill can
implement a predictable variation, §103 likely bars its patentability." *Id.* at
417. The Court further noted that "[a] person of ordinary skill is also a
person of ordinary creativity, not an automaton." *Id.* at 421.

9

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

## EXAMINER'S REJECTIONS

The Examiner rejects the following claims of the '093 patent under 35 U.S.C. § 103(a) as obvious over the cited prior art references:[4]

4. Claims 1, 3, 4, 6-14, 16 and 17 over Wright in view of Cox, Musgrave, Busboom, Hale '536, Hale '798 and Velke '755. Claim 11 is also alternatively rejected in further view of Procomas and Hamouz.

4A. Claim 15 over Wright, Cox, Musgrave, Busboom, Hale '536, Hale '798 and Velke '755 in view of Velke '031 or Berrios.

6. Claims 1, 3, 4 and 6-17 over Velke '031 in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798, and alternatively in further view of Velke '755. Claim 11 is also alternatively rejected in further view of Procomas and Hamouz.

## ISSUES

The following dispositive issues have been raised in the present appeal:

1. Whether the Examiner erred in concluding that the claims are obvious principally based on the combination Wright in view of Cox, Musgrave, Busboom, Hale '536, Hale '798 and Velke '755.

2. Whether the Examiner erred in concluding that the claims are obvious principally based on the combination of Velke '031 in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798, and alternatively in further view of Velke '755.

---

[4] For clarity, the following enumerated Rejections utilize numbering that corresponds to the numbering of the "Issues" used by the Patent Owner in its briefs and by the Examiner in the RAN.

10

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

## ANALYSIS

### *Rejections 4 and 4A*

Rejections 4 and 4A are based principally on the combination of
Wright in view of Cox, Musgrave, Busboom, Hale '536, Hale '798 and Velke
'755. All of the claims except claim 15 stand rejected in Rejection 4 as
unpatentable over this combination of prior art (RAN 2-14). The Examiner
finds that Wright teaches a mower with independent hydromotors, a mower
deck 9 and a combustion engine 7 where the mower deck is mounted
together and connected (RAN 2-3; *see also* FF 1A). However, the Examiner
concedes that Wright "fails to teach that vertical adjustment of the mower
deck enables movement of both the engine and the mower as one unit and
fails to teach the specifics of the vertical deck adjustment mechanism."
(RAN 3) (i.e., the recited "deck lift system for raising and lowering the
cutter deck assembly, engine deck, and combustion engine together in order
to adjust a blade cutting height of the mower" of the claims). Indeed, while
Wright suggests including a mechanism for adjusting the height of cut (also
referred to herein as "HOC"), it does not actually disclose a specific
mechanism for doing so (FF 1B-1D).

For the actual HOC adjustment mechanism and the control arm, the
Examiner relies Busboom that discloses a mower with "bell cranks 82, 104
and 76, 86, deck suspension chains 42, counterbalance springs 96,
adjustment handle 54, height control pin 106[,] and control arms 40 pivotally
connected to the mower deck (Figure 3)." (RAN 3). The Examiner
concludes that "[i]t would have been obvious to one having ordinary skill in

11

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

the art at the time of the invention, given the Wright suggestion of vertical height adjustability to have incorporated the Busboom HOC structures into the mower of Wright '138 as a mere substitution of known mechanisms for making mower decks 'vertically moveable or adjustable[.]'" (RAN 3; *see also* FF 2A-2E). The Examiner also finds that HOC adjustment in which "the engine moves with the cutting deck were well known in the art at the time of the invention" as evidenced by both Cox and Musgrave (RAN 3; *see also* FF 3A-4B). The Examiner states that given the teachings of Cox and Musgrave, "it would have been obvious to have arranged the modified Wright HOC adjustment to allow for the engine to move in concert with the deck structure as such HOC structures were well established alternatives for allowing an operator to change the cutting height." (RAN 3-4).

The Examiner concedes that "Wright as modified by Busboom, Cox and Musgrave would not necessarily provide for the claimed control arm length, i.e. that they are short enough such that 15 degree angular movement corresponds to 2.5 inches of vertical adjustment as claimed[.]" (RAN 4). However, the Examiner finds that Hale '536 and Hale '798 establish that different length control arms were known in the art and states that "[g]iven these combined teachings, merely adjusting the control arm length in the modified Wright system would have amounted to an obvious choice in engineering design in order to effect a desired range of vertical height adjustment." (RAN 4; *see also* FF 5, 6).

As to the position of the control arm pivot, the Examiner states that it being mounted forward of the foot platform would have been understood from Busboom "[s]ince the front wall of the Wright foot platform is the only

12

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

structure directly to the rear of the deck[,]" and this attachment point would also be rearward of the front edge of the drive wheel (RAN 4). The Examiner states that the modified Wright system fails to teach that the control arm pivot is located forward of the foot platform (RAN 5). The Examiner relies on Velke '755 for its teaching that it is "desirable to extend the rear edge of the engine deck over the foot platform to conserve space and protect the operator's feet from flying debris" so that it would have been obvious to one of ordinary skill to have incorporated this feature for the noted safety and space saving benefits, and "[i]n doing so, the resultant control arm pivot would be located forward of the rear end of the engine deck 13 as claimed." (RAN 5; FF 8A-8C).

Thus, the Examiner's position is that it would have been obvious to apply the HOC adjustment mechanism of Busboom, including the disclosed chains and control arm, to provide stable, vertical adjustability to the deck of Wright where the engine moves with cutting deck as known in the art as demonstrated by Cox/Musgrave. In addition, it is also the Examiner's position that mounting the control arms' pivot in the location recited would have been obvious, especially in view of the safety and space benefits taught by Velke '755. The Examiner's position is supported by preponderance of the evidence. We address the Patent Owner's arguments *infra*.

The Patent Owner argues that even if the prior art references are combined, such combination does not result in the recited angle because the control arm of Busboom is too long (ABPO 9-10; *see also* Decl. of Wright ¶ 6). According to the Patent Owner, Busboom requires a control arm in order to stabilize the mower deck which is suspended by chains, and requires

13

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

the long length to prevent slackening or tightening of the belt by minimizing fore/aft movement during raising and lowering of the mower deck (ABPO 11; *see also* Decl. of Wright, ¶ 7). In contrast, the Patent Owner asserts that in the claimed invention, engine and deck moves together so that slack in the belt is not an issue (ABPO 11-12). The Patent Owner argues that there is no teaching or suggestion to adjust control arm length or recognition that it is a result effective variable that is to be optimized (ABPO 12-13). The Patent Owner further argues that both of the Hale references are directed to automatic leveling systems that cannot be implemented in Wright (ABPO 13-14).

The Patent Owner's arguments are unpersuasive because they do not take into account what the collective teachings of the prior art. *See In re Keller*, 642 F.2d 413, 425 (CCPA 1981) ("The test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference; nor is it that the claimed invention must be expressly suggested in any one or all of the references. Rather, the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art"). It is not necessary that the inventions of the references must be physically combinable, without change, to render obvious the invention under review. *See In re Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983).

As the Examiner noted, Wright suggests a mechanism for adjusting the height of the mower deck, but fails to disclose the specifics thereof (FF 1C, 1D). Absent such information, one of ordinary skill in the art would have logically considered known HOC adjustment mechanisms to

14

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

implement in the mower of Wright. Busboom is one such known
mechanism. When implementing the HOC adjustment mechanism of
Busboom in the mower of Wright, we agree with the Examiner (RAN 4) that
it would have been obvious to provide control arms that are sized to be
appropriate to the application so that when applied to the compact standing
mower of Wright which has a compact frame, the control arms would be
shorter than that disclosed in Busboom.[5] (RAN 8). In this regard, we agree
with the Requester that "[t]he logical reason for making the control arms
shorter was merely to fit them into the more compact form of mower that
Wright had **already** invented and patented in Wright '138 - to fit what
Owner acknowledges in Wright '138 was the 'reduced overall length ' of the
mower." (Resp. Br. R 9). We further agree with the Examiner (RAN 8) that
the resultant application of the control arm into the existing compact
structure satisfies the recited stabilization function.

The Patent Owner also argues that a person of ordinary skill in the art
would not provide Busboom's control arm in the mower of Wright because
there is no room and it would require substantial reconstruction and redesign
rendering Wright unsuitable for its intended purpose of providing compact
stand-on mower (ABPO 16-18). Again, these arguments are unpersuasive
because they are based on bodily incorporation and fail to consider the
combined teachings of the art and the skill of one of ordinary skill in the art.

---

[5] While not forming the basis of our decision, we also observe that size is
not ordinarily a patentable feature. *In re Rose,* 220 F.2d 459, 463 (CCPA
1955) ("size of the article under consideration [] is not ordinarily a matter of
invention"); *see also Gardner v. TEC Systems, Inc.,* 725 F.2d 1338, 1346,
(Fed. Cir. 1984); *In re Kirke,* 40 F.2d 765, 767 (CCPA 1930).

15

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

*See In re Keller,* 642 F.2d at 425; *In re Sneed,* 710 F.2d at 1550. Persuasive
evidence has not been provided that implementing Busboom's HOC
adjustment mechanism in Wright's mower by appropriately sizing it to fit
would have been beyond the skill of those in the art. *KSR,* 550 U.S. at 417.

The Patent Owner contends that Wright has no chains and there is no
need to provide a control arm because "the cutter deck 9 in Wright is already
structurally connected to engine deck 13 and frame 11" (ABPO 18, 21-22).
The Patent Owner further argues that neither Cox nor Musgrave discloses
any uncontrolled lateral movement and "[o]ne would not have added a
control arm to Wright/Musgrave or Wright/Cox to address an alleged
problem that did not exist or, at worst, was already solved." (ABPO 23-24).

However, as noted above, while Wright suggests a HOC adjustment
mechanism, it does not disclose a particular mechanism. Hence, when the
HOC adjustment mechanism of Busboom which includes chains is
implemented in the mower of Wright, a person of ordinary skill in the art
would have also provided a stabilizer rod (i.e., a control arm) disclosed in
Busboom for stabilization of the mower deck. While the mower of Wright
discloses that the "mower deck 9 is mounted on and connected to both
engine deck 13 and frame 11" (FF 1A), this does not preclude relative
movement between the mower deck and the engine deck (*see* Resp. Br. PO
13-14 (Patent Owner agreeing with the Examiner that the mower deck and
the engine deck of Wright can be "mounted on" each other and "connected,"

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

but "not necessarily move up/down together as one unit.")[6]; *see also* FF 4A,
4B). Wright also does not teach against the use of a mower deck supported
by chains which is well-known in the art and indeed present in the Busboom
mower (*see* Busboom, Figs. 3, 4) and not in dispute between the parties.
Thus, while the Patent Owner asserts that a control arm may not be
necessary in a mower based on the combination of Wright/Musgrave or
Wright/Cox, when the mower deck height control mechanism 44 of
Busboom with its chains is implemented in the Wright's mower to provide
the various functions thereof, a control arm would be desirable to stabilize
the mower deck.

The Patent Owner also argues that Wright criticizes sit-down mowers
like that of Busboom (ABPO 17-18). However, while Wright may criticize
sit-down mowers because of high centers of gravity and the difficulty of
users in ducking under low hanging tree limbs (*see* Wright, col. 1, l. 60-col.
2, l. 6), this teaching does not provide a correlation between the HOC
adjustment mechanisms known in the art and the seating position of the user.
Thus, the criticism in Wright with respect to seating position would not
dissuade one of ordinary skill in the art from implementing the HOC
adjustment mechanism that is also taught in Busboom. Furthermore, as
noted by the Requester, Wright '138 also "criticizes" many different kinds of
mowers which would, according to the Patent Owner's logic, result in the

---

[6] In response to questioning regarding relative movement between the
engine, the engine deck and the cutting deck in the mower of Wright, the
Patent Owner's legal representative Mr. Rhoa also stated:

> MR. RHOA: Wright 138, yes. Is it possible that there is some
> movement there between? Yes, it's possible.

17

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

untenable position of removing a substantial body of art pertinent to mowers
from consideration (Resp. Br. R 15 and citations therein). Nonetheless, a
known or obvious product "does not become patentable simply because it
has been described as somewhat inferior to some other product for the same
use." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994). The Patent Owner
also takes issue with the Examiner's statement that "[g]iven these combined
teachings, merely adjusting the control arm length in the modified Wright
system would have amounted to an obvious choice in engineering design in
order to effect a desired range of vertical height adjustment." (RAN 4). The
Patent Owner argues that the "proposed rationale for the alleged shortening
of Busboom's control arm length is technically inaccurate and fundamentally
flawed" because the length of the control arm in Busboom "does ***not***
determine or effect the range of vertical height adjustment of the cutter
deck." (ABPO 15-16, *citing* Decl. of Wright ¶ 8). The Patent Owner argues
that "the length of control arm 40 in Busboom has nothing to do with
determining/effecting the range of vertical height adjustment of the cutter
deck." (*Id.*).

We are not persuaded that the Examiner erred. Firstly, the Patent
Owner misstates the Examiner. The Examiner did not say that the control
arm "*determine[s]* or effect the range of vertical height adjustment *of the
cutter deck*" as asserted by the Patent Owner (emphasis added). Secondly,
the Examiner stated that the phrase has been taken "out of context" by the
Patent Owner and in view of the apparent misunderstanding, explained that
"[c]learly it is not the control arms that control the height adjustment. In the
proposed rejection, the control arms allow, thus effect, *the vertical height*

18

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

*range that was claimed for the control arms*, but do not actually perform, i.e. directly cause the height adjustment." (RAN 9, emphasis added). In other words, by virtue of their connection to the mower deck, the control arms move as the vertical height of the mower deck is adjusted to result in the vertical height adjustment range *of the control arm* of "no more than about 2.5 inches" as articulated in the claims. Indeed, the paragraph in which the statement at issue occurs sets the context by beginning with the statement that "Wright as modified by Busboom, Cox and Musgrave would not necessarily provide for the claimed control arm length, i.e. that they are short enough such that 15 degree angular movement *corresponds to 2.5 inches of vertical adjustment as claimed*[.]" (RAN 4, emphasis added). Thus, we agree with the Examiner that the Patent Owner has taken the statement at issue "out of context," and the Examiner has adequately clarified the statement misunderstood by the Patent Owner.

Thirdly, the crux of the Examiner's articulated reason for the rejection is that "merely adjusting the control arm length in the modified Wright system would have amounted to an obvious choice in engineering design" based on the evidence of record including Busboom and the Hale references (RAN 4). In this regard, the Examiner also stated that:

> Those having ordinary skill in the art would have understood that in incorporating the HOC structures of a sitting mower in a more compact standing mower as Wright as suggested into the rejection, that certain aspects would have needed to be adjusted to accommodate the parts... Plainly, those in the art would have understood that moving the Busboom HOC structures to a compact frame would have required shorter control arms, especially when the art was well aware that

19

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

> different frame structures require different length control arms
> as evidenced by the Hale patents.
> (RAN 8).

In addition, the Examiner further stated that:

> Those having ordinary skill in the art would have understood
> that when stabilization was required, control arms can be used
> as evidenced by any of Busboom or the Hale patents. Clearly it
> can be gleaned from those teachings that control arms do not
> have a finite length, but are instead dependent upon the distance
> between the mower deck and the portion of the frame that the
> engineer/designer sees fit to establish the requisite degree of
> stability. When attempting to stabilize in a more compact
> mower design such as Wright's, it is only reasonable to
> conclude that those in the art would have understood that
> shorter control arms would have been required to fit into that
> more compact system.
> (RAN 9-10).

We also highlight the fact that the explanation for the statement at

issue was first provided in the Action Closing Prosecution of March 6, 2012,

pages 4, 8-10. Thus, the Patent Owner had ample opportunity to respond,

and the Patent Owner did respond, to the substance of the rejection as

discussed above. To the extent that the Patent Owner believes that the

clarification changed the ground of rejection as articulated in the Non-Final

Office Action, the Patent Owner could have petitioned to have the rejection

denominated as a new ground of rejection and prosecution reopened.

Finally, the Patent Owner observes that the claims require the rear

pivot axis of the control arm to be located "forward of a rear end of the

engine deck assembly." (ABPO 24). The Patent Owner asserts that "[t]he

rear of the engine deck 13 in Wright essentially abuts the front wall 89 of the

platform structure, and therefore there is no way to extend the engine deck

20

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

farther rearwardly as alleged in the Office Action." (ABPO 24). However, this argument is unpersuasive because it is again essentially based on bodily incorporation, and does not account for accommodating the extended engine deck in the manner shown in Figure 5 of Velke '755 to which the teachings regarding the safety and space benefits are directed (FF 8C). *See In re Keller*, 642 F.2d at 425.

As to claims 4 and 6, the Patent Owner does not provide any separate arguments as to their patentability (ABPO 25). As to claim 17, the Patent Owner observes that it requires control arms that are even shorter than that of claim 1, but does not proffer arguments that substantively differ from those already considered (ABPO 25). The Patent Owner also does not proffer separate arguments with respect to claims 3, 7-14 and 16.

In view of the above, the Examiner has set forth a *prima facie* case of obviousness with respect to Rejection 4 which was not rebutted by the Patent Owner considering the totality of the evidence. We therefore affirm the Examiner. The Patent Owner relies on the same arguments with respect to claim 15 rejected in Rejection 4A (ABPO 26) which is also principally based on the combination of Wright in view of Cox, Musgrave, Busboom, Hale '536, Hale '798 and Velke '755. Thus, we affirm Rejection 4A as well.

### Rejection 6

Rejection 6 rejects all of the claims as obvious over the combination of Velke '031 in view of Cox, Musgrave, Busboom, Hale '536 and Hale '798, and alternatively in further view of Velke '755 (RAN 14-19). The Examiner's rejection is substantively similar to Rejection 4 except that prior

21

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

art reference Velke '031 is substituted for Wright (RAN 19; ABPO 26). In particular, Velke '031 teaches a zero turn radius mower with a foot platform wherein height of cut is adjusted by changing the mounting each front caster wheel and wheel/drive motor using mounting holes (FF 7A, 7C). Hence, Velke '031 differs from Wright discussed *supra* in that Velke '031 does disclose an HOC adjustment mechanism. The Examiner concludes that using the HOC adjustment mechanism of Busboom instead of that provided in Velke '031 is a "mere substitution of known mechanisms for making mower decks vertically moveable or adjustable and to incorporate the added bonus of ease of adjustment to Velke ['031]." (RAN 15). As to the provision of a control arm and the length thereof, the disagreement and arguments between the Patent Owner and the Examiner are substantively the same as those discussed *supra* relative to Rejection 4 (RAN 16; ABPO 27-32).

For the reasons substantially similar to those already discussed *supra* relative to Rejection 4, we find no error in the Examiner's rejection. We further add that providing ease of adjustment as articulated by the Examiner is another rational reason for implementing the HOC adjustment mechanism of Busboom that uses a lever, the HOC adjustment in Velke '031 of adjusting each wheel height being cumbersome in comparison (*see* Resp. Br. R 19-20). We further agree with the Examiner that modification of the length of the control arm would have been obvious to one of ordinary skill in the art for the reasons already discussed. We also note that in contrast to Rejection 4, the Patent Owner does not submit arguments as to the specific positioning of the rear pivot axis of the control arm in response to the Examiner's findings that the modified Velke '031 appears to satisfy the

22

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

positioning recited, and even if it did not, the application of teachings in
Velke '755 results in such positioning (RAN 16-17).

As to claims 4 and 6, the Patent Owner again does not provide any
separate arguments as to their patentability (ABPO 32). As to claim 17, the
Patent Owner again observes that it requires control arms that are even
shorter than that of claim 1, but does not proffer arguments that
substantively differ from those already considered (ABPO 32-33). The
Patent Owner also does not proffer separate arguments with respect to
claims 3, 7-14 and 16.

Correspondingly, we find that the Examiner has set forth a *prima facie*
case of obviousness with respect to Rejection 6 and we affirm the same.

## CONCLUSIONS

1.     The Examiner did not err in concluding that the claims are
obvious principally based on the combination Wright in view of Cox,
Musgrave, Busboom, Hale '536, Hale '798 and Velke '755.

2.     The Examiner did not err in concluding that the claims are
obvious principally based on the combination of Velke '031 in view of Cox,
Musgrave, Busboom, Hale '536 and Hale '798, and alternatively in further
view of Velke '755.

3.     We do not reach the Cross-Appeal of the Requester.

Requests for extensions of time in this *inter partes* reexamination
proceeding are governed by 37 C.F.R. §§ 1.956.

23

Appeal 2013-002900
Reexamination Control 95/001,742
US 6,935,093 B2

## AFFIRMED

PATENT OWNER:

NIXON & VANDERHYE PC
901 North Glebe Road
11th Floor
Arlington, VA  22203

THIRD PARTY REQUESTER:

James W. Miller
527 Marquette Avenue
Suite 1960, Rand Tower
Minneapolis, MN  55402

# CERTIFICATE OF INTEREST

Counsel for Third Party Requester-Appellee The Toro Company certifies the following:

**1.    The full name of every party represented by us is:**

The Toro Company

**2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:**

Not applicable

**3.    All parent corporations and any other publicly held companies that own 10 percent or more of the stock of the party or amicus curae represented by us are:**

Not applicable

**4.    The name of all law firms and the partners or associates that appeared for Third Party Requester-Appellee The Toro Company before the United States Patent and Trademark Office or are expected to appear in this Court are:**

**Merchant & Gould PC**
Rachel C. Hughey
Anthony R. Zeuli
Katherine E. Muller
3200 IDS Center
80 S. Eighth Street
Minneapolis, MN  55402

James W. Miller
Rand Tower, Suite 1960
527 Marquette Avenue
Minneapolis, MN  55402

August 12, 2014

/s/ Rachel C. Hughey
Rachel C. Hughey

*Attorney for Third Party*
*Requester-Appellee*
*The Toro Company*

## CERTIFICATE OF SERVICE

I, Rachel C. Hughey, hereby certify on this 12th day of August, 2014 that I am electronically filing the following documents:

- Third Party Requester-Appellee's Unopposed Motion to Consolidate Appeal No. 14-1534 with Appeal No. 14-1558

- Declaration of Rachel C. Hughey with Exhibits 1-4; and

- Certificate of Interest


using the Court's CM/ECF system.  I hereby certify that on the same date copies of the foregoing was served via the Court's CM/ECF system on counsel of record:

Joseph A. Rhoa
Nixon & Vanderhye P.C.
901 North Glebe Road
11th Floor
Arlington, VA  22203
jar@nixonvan.com


Dated: August 12, 2014          /s/ Rachel C. Hughey
                                Rachel C. Hughey
                                Merchant & Gould P.C.
                                3200 IDS Center
                                80 S. Eighth Street
                                Minneapolis, MN  55402
                                (612)332-5300