**2014-1534, -1558**

*In The*
# United States Court of Appeals
*For The Federal Circuit*

**WRIGHT MANUFACTURING, INC.,**

*Appellant,*

v.

**THE TORO COMPANY,**

*Appellee.*

**APPEALS FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, PATENT TRIAL AND APPEAL BOARD RE: REEXAMINATION NOS. 95/001,741 AND 95/001,742.**

**REPLY BRIEF OF APPELLANT**

**Joseph A. Rhoa**
N!XON & VANDERHYE P.C.
**901 North Glebe Road**
**Arlington, Virginia  22203**
**(703) 816-4000 (Telephone)**
**(703) 816-4100 (Facsimile)**
**jar@nixonvan.com**

*Counsel for Appellant*                                      *Dated:  February 4, 2015*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I. WRIGHT TIMELY FILED THE NOTICES OF APPEAL ............................ 1

II. TORO IGNORES THE USPTO'S ACTUAL REJECTIONS AND
IGNORES WRIGHT'S ARGUMENTS ......................................................... 5

III. CONCLUSION ............................................................................................ 12

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Fundicao Tupy, S.A. v. U.S.*,
    841 F.2d 1101 (Fed. Cir. 1988) ....................................................................... 3

*KSR Intern. Co. v. Teleflex Inc.*,
    550 U.S. 398, 127 S. Ct. 1727 (2007) ............................................................ 10

*Lewis v. Alexander*,
    987 F.2d 392 (6th Cir. 1993) ............................................................................ 3

**STATUTE**

35 U.S.C. § 142 ........................................................................................................ 1

**RULES**

Fed. Cir. R. 15(a)(1) ................................................................................................ 4

Fed. Cir. R. 52(d) .................................................................................................... 3

**REGULATIONS**

37 C.F.R. §§ 1.304(a)-(b) ........................................................................................ 1

37 C.F.R. § 1.983 .................................................................................................... 2

I. **WRIGHT TIMELY FILED THE NOTICES OF APPEAL.**

Appellee The Toro Company ("Toro") argues that this Court lacks jurisdiction because Appellant Wright Manufacturing, Inc. ("Wright") allegedly "did not timely file its notice of appeal." While Toro admits that Wright timely filed its Notice of Appeal electronically with the USPTO on April 14, 2014, Toro argues that this Court lacks jurisdiction because Wright allegedly did not file a copy of the notice of appeal with the General Counsel's office of the USPTO, or with this Court. These allegations are without merit and incorrect. This Court previously denied Toro's motions to dismiss for lack of jurisdiction in this respect, without prejudice. (Dkt. Entry 19 in 14-1534, and Dkt. Entry 18 in 14-1558.)

The PTAB's Decisions on Requests for Rehearing were issued on February 14, 2014. (A26-A33, A59-A66.) Wright then filed Notices of Appeal in a timely manner on April 14, 2014, within two months. *See e.g.*, 35 U.S.C. § 142; and 37 C.F.R. §§ 1.304(a)-(b). (A1093-A1130, A2070-A2107, Foster Decls., ¶¶ 2-5 at Dkt. Entry 12 in 14-1534 and Dkt. Entry 10 in 14-1558.)

In addition to documentary evidence, Wright submitted the Declarations of Robert K. Foster to this Court as further evidence of the proper filings.

First, Wright electronically filed its Notices of Appeal with the USPTO, and served them on Toro, on April 14, 2014. (Foster Decls., ¶¶ 2-3 at Dkt. Entry 12 in 14-1534 and Dkt. Entry 10 in 14-1558, A1093-A1095, A2070-A2072; A2221-

A2230.) The electronic filing receipts from the electronic filings with the USPTO, evidencing that the Notices of Appeal were timely filed on April 14, 2014, are attached to the Foster Declarations, *id.*, and are also in the Joint Appendix at A1129-A1130, A2106-A2107. Second, and contrary to Toro's unsupported allegation, Wright mailed the Notices of Appeal to the General Counsel's office of the USPTO on April 14, 2014. (Foster Decls., ¶¶ 2-3 at Dkt. Entry 12 in 14-1534, Dkt. Entry 10 in 14-1558, and A2221-2230.) The fact that the USPTO sent the Notice Forwarding Certified List to this Court further evidences that Wright mailed the Notice of Appeal to the General Counsel's office, because it is receipt of that mailing which typically triggers the preparation by the USPTO of the Notice Forwarding Certified List. (A1131-A1133, A2108-A2110.) Accordingly, Wright properly and timely filed its Notices of Appeal with the USPTO in two different manners on April 14, 2014, electronically and via mail. (Foster Decl., ¶¶ 2-3 at Dkt. Entry 12 in 14-1534, Dkt. Entry 10 in 14-1558, and A2221-A2230.) Each of these two filings with the USPTO on April 14, 2014 qualifies as filing the Notice of Appeal "directed to the Director" as mentioned in 37 C.F.R. § 1.983.

The USPTO has confirmed that Wright's Notices of Appeal were properly filed. The USPTO, in its Notices Forwarding Certified List to this Court, expressly stated that Wright's Notices of Appeal were "timely filed on April 14, 2014,"

making clear that the USPTO viewed the notices as being properly and timely filed. (A1131, A2108.)

The timely filing of Wright's Notices of Appeal with the USPTO transferred jurisdiction to this Court. *Fundicao Tupy*, *S.A. v. U.S.*, 841 F.2d 1101 (Fed. Cir. 1988); and *Lewis v. Alexander*, 987 F.2d 392, 394 (6th Cir. 1993). It is the filing of the Notice of Appeal with the USPTO that transfers jurisdiction to this Court. Toro's arguments to the contrary are both unsupported and incorrect. Whether a fee was paid to this Court (it was), or whether a copy of the Notice of Appeal was filed with this Court (it was), has no bearing on whether jurisdiction was transferred to this Court.

Third, contrary to Toro's allegation, Wright electronically filed a copy of the Notices of Appeal with this Court on April 14, 2014. (Foster Decls., ¶¶ 4-5 at Dkt. Entry 12 in 14-1534, at Dkt. Entry 10 in 14-1558, and at A2221-A2230.) Indeed, the Clerk's Office suggested that they be filed electronically. *Id*.

Toro, in its motion to dismiss, also alleged that "Wright failed to pay the requisite filing fee" with this Court. While Toro does not appear to have made this argument in its Responsive Brief, Wright addresses it out of an abundance of caution and to emphasize that its appeal is proper. Fed. Cir. R. 52(d) states that Wright had 14 days from the docketing of the appeal to pay the fee to this Court. Contrary to Toro's argument, Wright did pay the appeal fees to this Court in a

timely manner.  (Dkt. Entry 10 in 14-1534; Foster Decl., ¶¶ 5-6 at Dkt. Entry 12 in 14-1534, Dkt. Entry 2 in 14-1558, and Foster Decl., ¶¶ 5-6 at Dkt. Entry 10 in 14-1558.)

Toro, in its motion to dismiss, also alleged that Wright did not comply with Fed. Cir. R. 15(a)(1).  While Toro does not appear to have made this argument in its Responsive Brief, Wright again addresses it out of an abundance of caution and to emphasize that its appeal is proper.  Rule 15(a)(1) is not deemed applicable here for two reasons.  First, Rule 15(a)(1), in effect from June 1, 2011 before this Court's electronic filing system was implemented, does not take into account electronic filings of notices of appeal with respect to the "three copies" language.  Rule 15(a)(1) does not specify what is to be done in the case of electronic filings.  Second, Rule 15(a)(1) does not refer to or cover appeals from the PTAB (the "PTAB" is different than the "Board of Patent Appeals and Interferences").  Rule 15(a)(1) does not specify what course of action to follow in appeals from the PTAB, which is the situation at issue here.  Because Rule 15(a)(1) appeared inapplicable to the situation at hand, and out of an abundance of caution, Wright called the Clerk's Office of this Court and asked how to proceed.  (Foster Decl., ¶ 5 at Dkt. Entry 12 in 14-1534 and at Dkt. Entry 10 in 14-1558.)  The Clerk's Office indicated that it would be preferred if the Notice of Appeal was filed with

this Court electronically. *Id.* Wright followed the advice of the Clerk's Office and filed the Notices of Appeal electronically with this Court on April 14, 2014. *Id.*

Toro's allegations are without merit. This Court has jurisdiction over the appeal.

## II. TORO IGNORES THE USPTO'S ACTUAL REJECTIONS AND IGNORES WRIGHT'S ARGUMENTS.

The arguments in Toro's Responsive Brief largely ignore both the actual rejections by the USPTO and the arguments in Wright's Opening Brief. Toro's attempts to recast Wright's arguments, as well as the actual rejections, should be seen for what they are – attempts by Toro to create confusion and avoid the true merits of this appeal.

Contrary to Toro's repeated allegation, Wright in its Opening Brief did not allege that the USPTO's rejection was based on adding Busboom's control arm *alone* to Velke '031 (or Wright '138). Wright consistently pointed out, and addressed its arguments toward, the actual rejection which involved adding Busboom's HOC adjustment mechanism (which includes control arm 40) to Velke '031 (or Wright '138) as allegedly modified by Cox and Musgrave. (*E.g.*, Appellant's Br. at 13-25, 27-31.)

Wright made clear on pages 20-25 and 27-31 of its Opening Brief that the PTAB affirmed the reexamination examiner's obviousness finding that it would have been obvious to have modified Velke '031 (or Wright '138) so that the cutter

- 5 -

deck moved up/down along with the engine deck and engine as in Cox (A334-A345) and Musgrave (A2128-A2136). (A7-A8, A13-A14, A702, A714-715, A41, A46, A1706, A1718-A1719.) Thus, Wright explained that *it is actually Velke '031 (or Wright '138) as modified by Cox and Musgrave to which Busboom's HOC adjustment mechanism is allegedly added*. (*E.g.*, Appellant's Br. at 20-25, 27-31.) Wright explained that Busboom's HOC adjustment mechanism (which includes the pivoting control/stabilizing arm 40 relied upon by the USPTO to meet the claim) would be inoperable and serve no purpose if Velke '031 (or Wright '138) were modified so that the cutter deck and engine deck moved up/down together as a unit as in Cox or Musgrave as alleged by the PTAB and the reexamination examiner. Toro never contested this, and never addressed the merits of the actual rejection in its Responsive Brief. Toro never argued that Busboom's HOC mechanism could serve any purpose, or perform any function, if added to Velke '031 (or Wright '138) *as alleged modified by Cox/Musgrave*. Instead, Toro attempted to avoid this issue by making arguments about the addition of Busboom's HOC mechanism to *only* Velke '031 (or Wright '138) – such arguments fail to address both Wright's point and the actual rejections.

   Toro argues on pages 41 and 44 of its Responsive Brief that:

> *All that was done* in arriving at the alleged invention in the '741 and '742 reexams was to use the known Busboom '033 HOC system with control arms on the very similar mower shown in Wright '138 [or Velke '031] . . . *The mower claimed*

> *in the '741 and '742 reexams is nothing more than the compact mower in Wright '138 [or Velke '031] combined with the HOC adjustment mechanism (including control arms) in Busboom '033:"*

(Appellee's Responsive Br. at 41 and 44) (emphasis added). This cornerstone argument by Toro is untrue, as it ignores the Cox, Musgrave and the two Hale references in the rejection. The USPTO necessarily disagrees with Toro's argument as evidenced by the fact that Cox, Musgrave and the two Hale references were also used to reject the claims at issue, in addition to Busboom and Velke '031/Wright '138 (*i.e.*, the rejection is not just Velke '031 and Busboom as suggested by Toro). Busboom's HOC system does *not* include a cutter deck, engine deck, frame or engine (A12-A13, A45-A46). Simply adding Busboom's HOC system to Velke '031 or Wright '138 would *not* meet the claims for numerous reasons. For example, the important claimed feature of the cutter deck, engine, and engine deck moving up and down together as a unit relative to the wheels would not be met by such a modification (Busboom fails to disclose this feature) – Cox and Musgrave were used by the USPTO to meet this feature. For instance, in Busboom '033 (and equivalent Busboom '020) the HOC system moves the cutter deck 28, 30 up/down relative to the stationary engine 20, stationary engine deck 18 and stationary frame – this is very different than the claimed invention. (A2177-A2180; A2185-A2189, and '931 Patent at col. 1:23-37.) As another example, the claimed control arm lengths would not be met by such a

- 7 -

modification because Busboom's control arm is too long to meet the claims – the two Hale references were used by the USPTO to meet this feature. Toro's deceptive attempt to recast the rejections in an effort to ignore the Cox and Musgrave aspects of the rejections emphasizes the fundamental deficiencies in Toro's argument.

As explained in Wright's Opening Brief, the PTAB and reexamination examiner relied on Cox (A334-A345) for a structure where the *cutting blade is raised/lowered together with frame 24 and engine 29*. The PTAB and reexamination examiner did this because merely adding Busboom's HOC mechanism to Velke '031 or Wright '138 would *not* meet the claims because the claimed feature of the cutter deck, engine, and engine deck moving up and down together as a unit would not be met. Accordingly, the PTAB and Examiner had to modify Velke '031 (or Wright '138) with Cox's (and/or Musgrave's) structure in this respect before adding Busboom's HOC system to the cutter deck, engine deck, engine, and frame of Velke '031 (or Wright '138) as modified by Cox/Musgrave.

In this respect, Cox at page 4 teaches that the frame 24 raises/lowers *together* with the blade and engine 29 as a single unit. (A337.) Importantly, there is no disclosure in Cox of any uncontrolled movement of any alleged cutter deck assembly relative to the frame or engine, and there is no suggestion that anything needs to be stabilized. Again, unlike Busboom, there is no suspension by loose

chains in Cox's structure and the cutting assembly does not need to be stabilized because it moves together with the frame 24 and is already connected thereto. Thus, there is no stabilization or lift problem with Cox, and there would have been no logical reason or motivation to have added Busboom's HOC mechanism including control arm 40 to Cox (or Velke/Wright as allegedly modified by Cox) because the cutting assembly is fixed relative to the frame and there is nothing that needs to be stabilized. The USPTO's allegation that it would have been obvious to have added Busboom's HOC mechanism (including control/stabilizing arm 40) for stabilizing purposes makes no sense.

Similarly, the PTAB and reexamination examiner similarly relied on Musgrave for a structure where the cutter deck is raised/lowered together with the engine 21. Similar to Cox, Musgrave does not describe any structure or problem to be solved that would have led one to have used Busboom's control arm 40 or HOC adjustment mechanism. Again, there is no suspension by loose chains in Musgrave. Musgrave has no such chains, and would have never used such chains because the cutter deck assembly 50 in Musgrave is already attached to the frame 11 via plate 16 and bolts 12 in slots 13. (Musgrave at Fig. 1; Fig. 6; col. 3:30-32; col. 4:59-67 [A2128, A2132, A2134].) Bolts 12 in slots 13 control the lateral location of the cutting assembly during raising/lowering in Musgrave, so that there is no uncontrolled movement and so that there is nothing that needs to be

stabilized. *Id*. Again, there would have been no logical reason to have added Busboom's HOC mechanism (including control arm 40) to Velke '031 (or Wright '138) as allegedly modified by Musgrave. One would not have added Busboom's HOC mechanism (including control arm 40) to Velke '031 or Wright '138, as modified by Musgrave or Cox, to address an alleged problem that did not exist or was already solved. Again, the USPTO's allegation that it would have been obvious to have added Busboom's HOC mechanism (including control/stabilizing arm 40) for stabilizing purposes makes no sense.

Accordingly, one of ordinary skill in the art at the time of the invention would never have attempted to add Busboom's HOC adjustment mechanism (including alleged control arm 40) to Velke '031 or Wright '138, as allegedly modified by Cox or Musgrave, because the control arm would have served no purpose and would have been inoperative. The addition of a pivoting member (such as Busboom's control arm 40) between two members that are fixed to each other is pointless. Nonobviousness is evident because there is nothing to stabilize/control in Velke '031 (or Wright '138) as modified by Cox or Musgrave, and thus the control arm of Busboom would ***not*** perform the same function that it had been known to perform. *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 417, 127 S. Ct. 1727, 1740 (2007). Toro's failure to address this is telling. Toro also does not contest that the PTAB never found that the control arm of Busboom's

- 10 -

HOC adjustment mechanism would serve any purpose or be operable in the base reference Velke '031 (or Wright '138) as allegedly modified by Cox/Musgrave. And Toro did not content the point that the PTAB never provided any explanation or finding regarding how operability of Busboom's HOC adjustment mechanism in Velke '031 (or Wright '138) as allegedly modified by Cox/Musgrave could possibly occur. The rejections of the claims are based on legal error.

Finally, Wright pointed out in its Opening Brief that this is *not* a case where only a limited number of deck lift systems were available at the time of the invention, and that the PTAB made no such finding. Toro does not contest that the PTO made no such finding. Instead, Toro on page 52 of its Responsive Brief argues that "Wright fails to suggest even one alternative HOC system." Contrary to Toro's allegation, in addition to the HOC system of Busboom '033, various other drastically different HOC systems are in the record. For example, there are different HOC systems in Velke '031 (A2190-A2220), Cox (A334-A345; A1343-A1354), Musgrave (A2128-A2136), Procomas (A346-A349), Percy (A571-A583), Hale '536 (A2112-A2118), Hale '798 (A2119-A2127), and other art considered during the prosecution of these patents. As pointed out in Wright's Opening Brief, if one were to replace the HOC system in Velke '031 with another HOC system (or add one to Wright '138), one of ordinary skill in the art at the time of the invention would have chosen one (from the many different systems available) that would

have worked in the modified mower – not one such as Busboom's that would have served no function and could not work in Velke '031/Wright '138 as allegedly modified by Cox/Musgrave.

## III.  CONCLUSION

Wright respectfully requests that this Court reverse the USPTO's decisions. The independent claims would not have been obvious over the cited art. The USPTO has not met its burden of establishing a *prima facie* case of obviousness.

Respectfully submitted,

February 4, 2015

/s/ Joseph A. Rhoa
Joseph A. Rhoa
NIXON & VANDERHYE P.C.
901 North Glebe Road
Arlington, Virginia  22203
(703) 816-4000 (Telephone)
(703) 816-4100 (Facsimile)
jar@nixonvan.com

*Counsel for Appellant*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 4th day of February, 2015, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

    Rachel C. Hughey
    Anthony R. Zeuli
    Katherine E. Muller
    MERCHANT & GOULD P.C.
    3200 IDS Center
    80 South Eighth Street
    Minneapolis, Minnesota  55402
    (612) 332-5300
    rhughey@merchantgould.com
    tzeuli@merchantgould.com
    kmuller@merchantgould.com

    *Counsel for Appellee*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Reply Brief of Appellant will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

                                        /s/ Joseph A. Rhoa
                                        *Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*2,855*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>February 4, 2015</u>                    <u>/s/ Joseph A. Rhoa</u>
                                                  *Counsel for Appellant*